NUMBER 13-97-095-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


ORLANDO JAVIER PEREZ
, Appellant,


v.



THE STATE OF TEXAS
, Appellee.

___________________________________________________________________


On appeal from the 103rd District Court


of Cameron County, Texas.


____________________________________________________________________


O P I N I O N



Before Justices Dorsey, Hinojosa, and Rodriguez


Opinion by Justice Rodriguez



 This case is before us on remand from the Texas Court of Criminal
Appeals. As a result of his involvement in a drive-by shooting, a jury
convicted appellant, Orlando Javier Perez, of aggravated assault with
a firearm(1) and assessed his punishment at fifteen years imprisonment. 
By four issues Perez complains that: (1) the evidence is legally and
factually insufficient; (2) article 44.46 of the Texas Code of Criminal
Procedure conflicts with the Texas Constitution; (3) the court abused its
discretion when it required a co-defendant to refuse to take the oath in
the presence of the jury; and (4) the court erred in admitting tainted
eyewitness identifications. We affirm.

 In our original opinion, we concluded article 44.46 of the Texas
Code of Criminal Procedure was in conflict with article XVI, section 2 of
the Texas Constitution, and reversed and remanded for a new trial. See
Perez v. State, 973 S.W.2d 759, 762, 762 (Tex. App.--Corpus Christi
1998), rev'd, 11 S.W.3d 218, 221 (Tex. Crim. App. 2000) (en banc). 
The court of criminal appeals granted the State's petition for
discretionary review, reversed our judgment on the constitutionality of
article 44.46 as applied to Perez, and remanded this issue for our
reconsideration in a manner consistent with its opinion. See Perez, 11
S.W.3d at 221.

 By his second issue, Perez asserts that article 44.46 of the Texas
Code of Criminal Procedure is incompatible with the Texas Constitution
because it undermines the right to trial by a qualified jury. After
reconsideration consistent with the court of criminal appeals' opinion,
we overrule this issue.

 Perez filed a motion for new trial alleging, inter alia, that a
disqualified juror sat on the jury panel. At the hearing on his motion,
Perez and the State entered into the following stipulations: (1) one of
the jurors had a final conviction for felony driving while intoxicated; and
(2) this information was not ascertained until after the verdict was
rendered. The trial court overruled Perez's motion for new trial on the
basis that Perez failed to make a showing of "significant harm," as
mandated by article 44.46(2).

 The Texas Constitution provides that "laws shall be made to
exclude from . . . serving on juries . . . those who may have been or
shall hereafter be convicted of bribery, perjury, forgery, or other high
crimes." Tex. Const. art. XVI, § 2. Perez argues that felony driving
while intoxicated is a "high crime," and, thus, the juror should have
been constitutionally disqualified.

 The Texas Code of Criminal Procedure, article 44.46, sets out
statutory juror disqualifications. It provides: 

 A conviction in a criminal case may be reversed on appeal on
the ground that a juror in the case was absolutely
disqualified from service under Article 35.19 of this code only
if:


 (1) the defendant raises the disqualification before
the verdict is entered; or


 (2) the disqualification was not discovered or
brought to the attention of the trial court until
after the verdict was entered and the defendant
makes a showing of significant harm by the
service of the disqualified juror.


Tex. Code Crim. Proc. Ann. art. 44.46 (Vernon Supp. Pamph. 2001). 
Article 35.19 provides that "no juror shall be impaneled when it appears
that he is subject to the second, third or fourth ground of challenge for
cause in Article 35.16, though both parties may consent." Tex. Code
Crim. Proc. Ann. art. 35.19 (Vernon 1989). Article 35.16 provides, in
relevant part:

 (a) A challenge for cause is an objection made to a particular
juror, alleging some fact, which renders him incapable or
unfit to serve on the jury. A challenge for cause may be
made by either the state or the defense for any of the
following reasons:


* * * * *


 2. That he has been convicted of theft or any
felony;


 3. That he is under indictment or other legal
accusation for theft or any felony;


 4. That he is insane. . . .


Tex. Code Crim. Proc. Ann. art. 35.16(a) (Vernon 1989).


 The Texas Court of Criminal Appeals recently determined in this
case that felony driving while intoxicated cannot reasonably be
characterized as a "high crime" because it does not have the same type
of moral corruption and dishonesty inherent in those specified offenses
of bribery, forgery and perjury. See Perez, 11 S.W.3d at 221 (citing
Perez, 973 S.W.2d at 763-64 (Dorsey, J., dissenting)); see also Tex. Pen.
Code Ann. §§ 49.04, 49.09(b) (Vernon Supp. 2001). Thus, felony driving
while intoxicated is not a constitutional disqualification; rather, it is a
statutory disqualification. See Perez, 11 S.W.3d at 221. Accordingly,
we conclude there is no conflict between article XVI, section 2 of the
Texas Constitution and article 44.46 of the Texas Code of Criminal
Procedure.(2)

 Because we have determined that the juror disqualification in this
case is a statutory disqualification, and that it was not discovered until
after the verdict was entered, Perez must show "significant harm by the
service of the disqualified juror." See Tex. Code Crim. Proc. Ann. art.
44.46(2) (Vernon Supp. Pamph. 2001). Perez complains that the juror-felon's service demonstrated significant harm, and that it was harmful
per se. However, Perez points us to nothing in the record, makes no
argument, and cites no authority to support his contention. See Tex. R.
App. P. 38.1(h)(appellant's brief to contain clear and concise argument
for contentions made with appropriate citations to authorities and to
record). An assertion without argument, authority or record cites
presents nothing for our review.(3) See id.; McFarland v. State, 928
S.W.2d 482, 512 (Tex. Crim. App. 1996). We conclude that Perez's
allegations regarding significant harm are inadequately briefed. Further,
a conviction alone does not constitute "significant harm" within the
meaning of article 44.46. See State v. Read, 965 S.W.2d 74, 77 (Tex.
App.--Austin 1998, no pet.); Hernandez v. State, 952 S.W.2d 59, 71
(Tex. App.--Austin 1997, pet. granted), vacated on other grounds, 957
S.W.2d 851 (Tex. Crim. App. 1998). Perez's second issue is overruled.

 By his first issue, Perez argues the evidence is neither legally nor
factually sufficient to establish he knew of the intent of the shooter, or
that he did anything with the specific intent to aid the shooter in
committing the assault.

 When reviewing the legal sufficiency of the evidence, we review
the evidence in the light most favorable to the verdict to determine
whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. See Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000); Skinner v. State, 956 S.W.2d 532, 536 (Tex.
Crim. App. 1997). In conducting this review, we do not weigh the
evidence tending to establish guilt and innocence or assess the
credibility of the witnesses on each side. See Ex parte Elizondo, 947
S.W.2d 202, 205 (Tex. Crim. App. 1996). The jury is the sole trier of
fact, and may judge the credibility of the witnesses, reconcile conflicts
in the testimony, and accept or reject any or all of the evidence on either
side. See Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App.
1991); see also Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App.
1997). If there is evidence that establishes guilt beyond a reasonable
doubt, and the trier of fact believes that evidence, the appellate court
does not reverse the judgment on legal sufficiency grounds. See
Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

 When reviewing factual sufficiency, we view all of the evidence
without the prism of "in the light most favorable to the prosecution"
and set aside the verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. See Johnson,
23 S.W.3d at 11; Cain, 958 S.W.2d at 407; Clewis v. State, 922 S.W.2d
126, 135 (Tex. Crim. App. 1996). The review must be appropriately
deferential so as to avoid substituting this Court's judgment for that of
the jury. See Cain, 958 S.W.2d at 407.

 A person commits the offense of aggravated assault if he uses or
exhibits a deadly weapon while intentionally or knowingly threatening
another with imminent bodily injury. See Tex. Pen. Code. Ann. §
22.02(a) (Vernon 1994). A person is criminally responsible as a party
to an offense if the offense is committed by his own conduct, the
conduct of another for which he is criminally responsible, or both. See
Tex. Pen. Code Ann. § 7.01(a). A person is criminally responsible for an
offense committed by another if, acting with intent to promote or assist
the commission of the offense, he solicits, encourages, directs, aids, or
attempts to aid the other person to commit the offense. See Tex. Pen.
Code Ann. § 7.02(a)(2). Sufficiency of the evidence is measured by the
elements of the offense as defined by the "hypothetically correct jury
charge for the case." See Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997).

 In determining attempts to aid the other person to commit the
offense, the fact finder may consider events occurring before, during or
after the commission of the offense. See Beardsley v. State, 738
S.W.2d 681, 684 (Tex. Crim. App. 1987). Furthermore, circumstantial
evidence may be sufficient to show that one is a party to an offense. 
See id. Finally, intent may be inferred from circumstantial evidence
such as the acts, words, and conduct of the accused. See Wolfe v.
State, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996); Patrick v. State,
906 S.W.2d 481, 487 (Tex. Crim. App. 1995).

 The evidence in this case reveals that a white Grand Marquis, an
older model gray Grand Marquis, and a green truck were involved in the
shooting incident. Amos Gonzalez, a passenger in the back seat of the
truck, drove with his friends to Morningside Park on the evening of the
incident. They stopped in a parking lot about ten yards from five or six
females and three males who were walking towards their cars. The
females drove away in the gray Grand Marquis, the males in the white
Marquis. Before they drove away, Gonzalez saw Perez walk to the
white Grand Marquis, open its door, and stare at the truck before
getting into the driver's seat of the car. Gonzalez testified he saw
Perez's face in adequate lighting from the stadium lights. Gonzalez
identified Perez as the driver in a photo lineup and made an in-court
identification of Perez.

 Gonzalez testified that the gray Marquis, the white Marquis, and
the truck, in that order, left the park and turned onto Central Avenue. 
The white Marquis slowed down to five miles per hour and moved to
the shoulder of the road. The truck then passed the white Marquis. 
Gonzalez next saw the white Marquis pull up beside the truck, traveling
along the center of the road. Gonzalez saw the window of the white
Marquis roll down, and he heard gunshots. The truck window broke
and glass fell on his arm. The car drove off and turned right at the next
street. Ricardo Rios, another passenger in the truck, was bleeding. 

 Rosenda Garza, the owner and driver of the truck, testified that
when she and her friends arrived at Morningside Park, she saw two
cars; four males were in a white Marquis and several females were in
another car. Garza testified the white Marquis and the truck passed
each other several times along Central Avenue, until the white Marquis
pulled up beside her truck and the shooting started. Three bullets hit
the truck. One hit the roof, the second the driver's door, and the third
a window. Rios was hit by one of the bullets. Garza did not identify
the driver of the white Marquis.

 Rios testified that when he and his friends arrived at Morningside
Park the lights were on at the playing fields. They stopped to see if they
knew any of the females waving to them. When the females left the
park in their car, followed by several males in their own car, Rios and
his friends also followed. At some point, the white Marquis moved to
the side of the road and the truck passed it. The next thing Rios
realized, he had been shot in the face. He testified the bullets came
from the left, but he did not see who shot him.

 Melba Murillo, one of the females in the gray Marquis, also
testified about the events leading up to the shooting. From a photo
lineup, Murillo identified Perez as the driver of the white Marquis.

 Based on the foregoing evidence, and viewing it in the light most
favorable to the trial court's judgment, a rational trier of fact could have
found that Perez was the driver of the white Marquis, and could have
inferred that Perez was a party to the offense by driving the car, pulling
over to allow the truck to pass, pulling alongside the truck to allow the
shooter to fire shots, passing the truck and then turning off of Central
Avenue at the next corner. We conclude the evidence is legally
sufficient to support Perez's conviction.

 Further, viewing all of the evidence without the prism of "in the
light most favorable to the prosecution," and granting appropriate
deference to the jury's verdict, the judgment is not so contrary to the
overwhelming weight of the evidence as to be clearly wrong and
unjust. We conclude that the evidence is factually sufficient to support
the conviction. Perez's first issue is overruled.

 By his third issue, Perez complains that the trial court abused its
discretion by requiring Guadalupe Flores, a co-defendant, to claim his
right not to incriminate himself in the presence of the jury. Perez also
contends that this procedure unfairly prejudiced the proceeding against
him in violation of Texas Rule of Evidence 403.

 Flores had already been convicted for his actions in the drive-by
shooting. The record reveals that the State granted Flores use
immunity. That is, the State agreed that any testimony Flores gave as
a witness would not be used against him in a retrial, or any other
proceeding he might pursue related to his case. A prosecutor may bind
himself to an agreement for use immunity. See Graham v. State, 994
S.W.2d 651, 656 (Tex. Crim. App. 1999). In doing so, the prosecutor
agrees to refrain from using particular evidence against the witness. 
See id. A witness who has been granted use immunity for his
testimony, does not have a valid basis for refusing to testify. See Coffey
v. State, 796 S.W.2d 175, 179 (Tex. Crim. App. 1990) (citations
omitted). Because Flores had been granted use immunity for his
testimony, he did not have a valid basis for refusing to be sworn in by
the trial court. Accordingly, the State had the right to compel Flores's
testimony and the trial court did not err in requiring Flores to take the
witness stand.

 We next consider whether calling Flores as a witness unfairly
prejudiced Perez. See id. at 177 n.4 (it could have been error had the
State asked witness a series of damaging questions in such a way as
to invite jury to assume answers to each question would have been in
the affirmative). Perez relies on Vargas v. State, 442 S.W.2d 686 (Tex.
Crim. App. 1969) and Washburn v. State, 299 S.W.2d 706 (Tex. Crim.
App. 1956), to support his contention that the proceeding prejudiced
him. 

 In Vargas, the court held it was error to call a convicted co-indictee
to the stand knowing he would invoke his fifth amendment privilege
against self-incrimination. See Vargas, 442 S.W.2d at 687. The co-indictee claimed the privilege against self-incrimination throughout
examination by the prosecutor. See id. After the witness's first refusal
to answer, the prosecutor said: "This man has no right to refuse to
testify on the grounds of incrimination. He's already been convicted of
the offense for which he is to be questioned." See id. (emphasis in
original). The court found error in the State calling the co-indictee as a
state witness. See id. (citing Washburn, 299 S.W.2d at 706 (to place
witness on stand and wring from him a refusal to testify, affording to
jury an opportunity to consider refusal as circumstance of guilt, has
been said to be "certainly prejudicial")). The Vargas court did not
address the fact that the co-indictee had no valid fifth amendment
privilege to invoke. See Coffey v. State, 744 S.W.2d 235, 238 (Tex.
App.--Houston [1st Dist.] 1987), aff'd, 796 S.W.2d 175, 180 (Tex. Crim.
App. 1990). The court also found reversible error in the prosecutor's
statement that the co-indictee had already been convicted for the same
offense. See Vargas, 442 S.W.2d at 787 (citations omitted).

 In Washburn, the State offered the co-defendant witness immunity
from any prosecution involving the transaction in the case. See
Washburn, 299 S.W.2d at 707. This offer was for transactional
immunity, not use immunity, and required approval of the court. See
id. Because the prosecution failed to show the court's approval,
immunity was not established. See id. Therefore, the co-defendant had
a valid fifth amendment privilege to invoke. See id. Further, by asking
fact-laden questions of the co-defendant witness, "the state was
permitted to plant in the jury's mind full details as to how they claimed
this crime was committed, and yet the only substantive evidence which
they were producing was the answer of the witness that he refused to
answer on the ground that his answers might tend to incriminate him.
. . ." Id. at 451. The court of criminal appeals determined that "[s]uch
refusal to testify was prejudicial because it could be used as an
incriminating fact against the appellant." Id.

 Washburn and Vargas are distinguishable. Washburn involved a
witness who invoked a valid fifth amendment privilege. Further, in each
case the State asked questions of the witness. In Washburn, the State
asked fact-laden questions to suggest how the crime was committed. 
In Vargas, although the court did not set out the State's line of
questioning, it relied on Washburn concluding the proceeding was
prejudicial. This suggests that it was not the calling of the witness who
claimed his fifth amendment privilege but the questioning that
influenced the courts' conclusions. We also note that the Vargas court
found reversible error in the State's comment following the witness's
first refusal to answer. Importantly, "the fatal flaw in appellant's
reasoning is the unstated assumption that any negative inference made
by a jury when a witness refuses to testify is improper." Coffey, 796
S.W.2d at 178.

 In this case, Flores had no valid fifth amendment privilege to claim. 
He refused to be sworn in by the trial court. Therefore, to the extent the
State could have sought to compel Flores's testimony, Perez was not
unfairly prejudiced. Further, unlike Washburn and Vargas, the State
asked no fact-laden questions of Flores from which the jury could have
inferred Perez's guilt, and the State did not comment on the witness's
refusal to answer. Accordingly, we conclude Perez was not unfairly
prejudiced. Perez's third issue is overruled.

 In his fourth issue, Perez contends the trial court erred in denying
his motion to suppress the identifications made by Murillo and
Gonzalez. Perez claims that the photographic lineup, containing one
"light-skinned" man (Perez) and five "coffee-colored" men, gave rise to
a very substantial likelihood of irreparable misidentification. Perez
argues Murillo's out-of-court identification was based on the 
suggestive photo lineup, and Gonzalez's in-court identification was
tainted by the suggestive photo lineup. We disagree.

 The standard for appellate review of a trial court's ruling on a
motion to suppress allegedly tainted eyewitness identification is set out
in Loserth. See Loserth v. State, 963 S.W.2d 770, 771 (Tex. Crim. App.
1998)(applying Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App.
1997), standard to eyewitness identification)). First, we consider
whether the pretrial photographic identification was impermissively
suggestive, and if so, we then consider whether the procedure gave rise
to a substantial likelihood of irreparable misidentification. See Loserth,
963 S.W.2d at 771-72 (citing Simmons v. United States, 390 U.S. 377,
384 (1968)). When a reviewing court finds a lineup suggestive, it
should consider the five Biggers factors(4)
 as issues of historical fact and
give almost total deference to the trial court's ruling considering the
evidence relative to those factors in the light most favorable to the trial
court's ruling. See Loserth, 963 S.W.2d at 773-74. The factors, viewed
in this light, should then be weighed de novo against "the corrupting
effect" of the suggestive pretrial identification procedure. See id.

 We have reviewed State's exhibit number 4, which is the original
of the photographic spread shown to Murillo and Gonzalez. It contains
photographs of head shots of six Hispanic males. All of the young men
are of comparable age and facial features. All have short, dark hair. 
When presented with these pictures, both Murillo and Gonzalez picked
Perez's picture as the driver of the white Marquis. The skin color
difference between appellant and the other five men is, in our view,
minimal. We find the photographic lineup was not so impermissibly
suggestive such that it would influence the pre-trial identifications made
by Murillo and Gonzalez. Having found the line up was not
impermissibly suggestive, we need not reach the second prong of
Loserth. We conclude the trial court properly allowed the admission of
the identification testimony. Issue four is overruled.

 Accordingly, the judgment of the trial court is AFFIRMED.


 


 NELDA V. RODRIGUEZ

 Justice


Publish.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this 11th day of January, 2001. 

  

1. See Tex. Pen. Code Ann. § 22.02(a) (Vernon 1994). Perez was
found guilty based on the law of parties. See Tex. Pen. Code Ann. §§
7.01, 7.02(a)(2) (Vernon 1994).
2. Perez also asserts error on the following bases: (1) the
disqualification is constitutional and only a constitutional amendment
could change it, not a mere statute; and (2) article 44.46 offends the
constitutional separation of powers by altering the burden of proof on
the issue of harm. Having concluded there is no conflict between the
constitution and statute, we need not address these assertions.
3. Further, Perez urges ineffective assistance of counsel, yet he
provides this Court with no argument, authority or record cites for this
contention. See Tex. R. App. P.38.1(h).
4. In assessing reliability, the linchpin in determining admissibility
of identification, the following five non-exclusive factors should be
considered and weighed against the corrupting effect of any suggestive
identification procedure:


 1. the witnesses's opportunity to view the defendant;


 2. the witness's degree of attention;


 3. the accuracy of the witness's description;


 4. the witness's level of certainty at the confrontation;
and


 5. the length of time between the offense and the
confrontation.


See Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998(
(citing Neil v. Biggers, 409 U.S. 188, 199 (1972)); Webb v. State, 760
S.W.2d 263, 269 (Tex. Crim. App. 1998) (citing Manson v. Brathwaite,
432 U.S. 98, 114 (1977)).