Raymond Edward **COFFEY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 231–88.

Court of Criminal Appeals of Texas, En Banc.

Sept. 12, 1990.

Ken J. McLean (court appointed on appeal only), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and J. Harvey Hudson, Chuck Rosenthal & Cathleen C. Herasimchuk, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Opinion on Appellant's Petition for
Discretionary Review

CAMPBELL, Judge.

Appellant was convicted of the offense of injury to a child. V.T.C.A. Penal Code, § 22.04(a)(1). A jury sentenced appellant to 50 years confinement in the Texas Department of Corrections and a $10,000 fine. The First Court of Appeals affirmed appellant's conviction in a published opinion. *Coffey v. State*, 744 S.W.2d 235 (Tex.App.—Houston [1st] 1987). We granted appellant's petition for discretionary review in order to determine: (1) Whether the Court of Appeals "erred when it held that it was permissible for the State to proffer the witness Patty Ann Kalmbach, a co-defendant, before the jury knowing she intended to invoke the Fifth Amendment notwithstanding a grant of use immunity;"[1] and (2) whether "The Court of appeals erred by holding it was not error[,] over objection[,] to allow the prosecutor to argue 'I also submit to you one of the ways we have proof of his guilt is his demeanor. As you have watched him during this trial in this room and during his confession at the hospital and during his arrest.' "[2] We will affirm the judgment of the Court of Appeals.

In his first three grounds for review, appellant complains of the State calling Patty Kalmbach to testify before the jury, knowing that she would claim a Fifth Amendment privilege.[3]

---

1. This first issue was raised in appellant's first three grounds for review. Each of these grounds discusses a separate instance when Kalmbach was called to the stand. Otherwise, the first three grounds for review are identical. The second issue was originally designated as appellant's fourth ground for review.

2. The reasons for review for appellant's first ground for review are that this is an important issue of law which has not, but should be, decided by this Court. Tex.R.App.Pro. 200(c)(2), and because the Court of Appeals opinion conflicts with applicable decisions from this Court, Tex. R.App.Pro. 200(c)(3).

The reason for review of the second ground is that the decision below conflicts with the applicable decisions of this Court. Tex.R.App.Pro. 200(c)(3).

3. The record reflects that the following occurred in relation to Patty Kalmbach's testimony:

Q: Tell your name to the Court and jury, please, ma'am?
A: Patty Kalmbach.
Q: How do you spell your last name.

In regard to appellant's first three grounds for review, the Court of Appeals held that the witness, Kalmbach, did not have a right to invoke her Fifth Amendment rights because she had been granted use immunity for her testimony.[4] *Cf. Franco v. State*, 491 S.W.2d 890 (Tex.Cr. App.1973). Therefore, because the State had the right to compel Kalmbach's testimony, it was not error to call her to the stand and allow the jury to see her invoke the Fifth Amendment.

Appellant counters that the potential for unfairly prejudicing the jury is unaffected by the validity of a witness's Fifth Amendment claim. In addition, appellant argues

A: K-a-l-m-b-a-c-h.
 *   *   *   *   *   *
Q: I show you State's Exhibit No. 1. Who is that person?
A: I am sorry. I refuse to answer.
Q: Do you know how that person died?
A: I am sorry, sir. I refuse to answer.
MR. ROSENTHAL: No more questions.
Later that day, the State again called Patty Kalmbach to the witness stand:
MR. ROSENTHAL: The State recalls Patty Kalmbach.
THE JUDGE: Patty Kalmbach, please. Ms. Kalmbach, please come to the witness stand.
 *   *   *   *   *   *
THE JUDGE: You are the same Patty Kalmbach that came to the witness stand earlier in the trial, are you not?
THE WITNESS: Yes, sir.
 *   *   *   *   *   *
Q: Let me show you what's been entered into evidence as State's Exhibit No. 1. Who is the person in that photograph?
A: Respectfully, sir, I can't answer that.
MR. ROSENTHAL: I pass the witness, Your Honor.
After a weekend break, the State again called Patty Kalmbach to the witness stand:
MR. ROSENTHAL: At this time the State calls Patty Kalmbach.
MR. HILL: For the purposes of the record, we would like to renew our objections previously made to Ms. Kalmbach being called as witness.
THE JUDGE: Objection overruled. Ms. Kalmbach, please come right down here. Please have a seat.
Again, for the record you are the same Patty Kalmbach who was [sic] been called to testify earlier in this trial, aren't you?
THE WITNESS: Yes, sir.
 *   *   *   *   *   *
Q: Ms. Kalmbach, could you tell the ladies and gentlemen of the jury who was with your child, Christopher, when pepper was placed in his mouth?

that the circumstances of this case guarantee that the jury would construe Kalmbach's refusal to testify in a manner that would be detrimental to him.

The State essentially echoes the position taken by the Court of Appeals. First, it argues that Kalmbach had no Fifth Amendment privilege and that she could have been compelled to testify. Second, it argues that the jury could not have drawn any improper inferences from Kalmbach's invocation of the Fifth Amendment.

Appellant's argument is grounded on the premise that, regardless of whether an invocation of the Fifth Amendment is proper,

MR. HILL: I personally object to the question of the prosecutor.
THE JUDGE: Rephrase it, please.
MR. ROSENTHAL: Excuse me, Your Honor, we've shown the reluctant witness the opportunity to go ahead. It may be appropriate in this situation.
THE JUDGE: The objection is overruled.
BY MR. ROSENTHAL:
Q: Ms. Kalmbach, would you tell the ladies and gentlemen of the jury who was with your child, Christopher Kalmbach, when the pepper was placed in his mouth?
A: I am sorry, but I refuse to answer that question.
Q: Would you tell the ladies and gentlemen of the jury whether you heard anything immediately prior to the pepper being placed in the mouth of Christopher Kalmbach?
A: I am sorry, sir, but I refuse to answer that question.
MR. ROSENTHAL: I pass the witness, Your Honor.

4. The court distinguished the instant case from others in which we have held that it is error for the State to call a witness who it knows will claim his or her Fifth Amendment privilege. *See Mathis v. State*, 471 S.W.2d 396 (Tex.Cr.App. 1971); *Washburn v. State*, 299 S.W.2d 706 (Tex. Cr.App.1957). The court held that because Kalmbach did not have a valid Fifth Amendment privilege, this case is fundamentally different from *Mathis*, and *Washburn*.

The court went on to note that we have found such error in only one instance in which there was no Fifth Amendment privilege. *See Vargas v. State*, 442 S.W.2d 686 (Tex.Cr.App.1969). "The *Vargas* court held that it was error to call a convicted co-indictee to the stand knowing that he would invoke his privilege against self-incrimination. The [C]ourt [of Criminal Appeals] did not address the fact that the witness had no valid fifth amendment privilege to invoke." *Coffey*, 744 S.W.2d at 238.

a jury will necessarily draw improper conclusions when the State calls a witness who refuses to testify.

The Court of Appeals' position on this issue is clear, viz, the co-defendant could not *validly* invoke the *Fifth;* therefore, no harm could possibly accrue to the appellant.

Using that rationale a vehicular homicide victim would be less dead because the accused did not intentionally run him down.

Appellant's Petition for Discretionary Review 3. The fatal flaw in appellant's reasoning is the unstated assumption that any negative inference made by a jury when a witness refuses to testify is improper. A jury may consider an invocation of a Fifth Amendment privilege under some circumstances.

The right to be free from comment about a failure to testify is not absolute. In *United States v. Robinson*, 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), the United States Supreme Court allowed a prosecutor to argue that "[the defendant] could have taken the stand and explained it to you, anything he wanted to. The United States of America has given him, throughout, the opportunity to explain," in response to defense counsel's closing argument that the government had not allowed the defendant to tell his side of the story. Thus, under those facts, it was permissible for the prosecutor to mention and for the jury to take note of the defendant's failure to testify.

Another exception to the general prohibition against allowing the jury to see an invocation of a Fifth Amendment privilege arises in certain instances where the State calls a witness who refuses to testify. This rule allows the State to call such a witness when " 'the prosecutor's case would be seriously prejudiced by a failure to offer him

as a witness.' " *United States v. Vandetti*, 623 F.2d 1144 (6th Cir.1980).[5]

Our own Fifth Circuit has justified this rule in a number of different settings and on a number of rationales. In *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), the defendant, a letter carrier, was prosecuted for stealing a silver dollar from an envelope that he was to deliver. When he was arrested, a postal inspector discovered that the defendant had two credit cards in his wallet that appeared to be stolen. Defendant opted to testify and claimed to have found the coin loose in a mailbox and that he intended to turn the coin over to his supervisor. The government introduced the two credit cards, which appeared to have been stolen by the defendant along his delivery routes, to rebut defendant's claim. During the State's cross-examination of defendant, the defendant refused to respond to any questions concerning the credit cards.

Although the trial court allowed the defendant to claim a Fifth Amendment privilege, the Fifth Circuit held that the defendant had waived his Fifth Amendment privilege, as to matters relating to his testimony, when he elected to testify. Because the government could have sought to compel the defendant to testify, there was no error in allowing the jury to hear the defendant invoke the privilege. *Beechum*, 582 F.2d at 909.

Here the *defendant* took the stand, knowing full well that the Government would inquire about the cards because the court had refused to prohibit that inquiry. Any prejudice deriving from the invocation of the privilege is therefore attributable to Beechum's decision to testify. Indeed, Beechum can hardly complain; if the court had ruled correctly and not allowed him to invoke the fifth

---

**5.** This rule has been generally accepted among federal Circuit Courts of Appeals. *See, e.g., United States v. Stulga*, 584 F.2d 142 (6th Cir. 1978); *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979); *United States v. Trejo–Zambrano*, 582 F.2d 460 (9th

Cir.), *cert. denied*, 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 682 (1978); *United States v. Yurasovich*, 580 F.2d 1212 (3d Cir.1978); *United States v. Reese*, 561 F.2d 894 (D.C.Cir.1977); *United States v. Martin*, 526 F.2d 485 (10th Cir.1975); *United States v. King*, 461 F.2d 53 (8th Cir.1972).

amendment, he could have refused to respond only on peril of contempt. See *United States v. Brannon*, 546 F.2d 1242, 1247 (5th Cir.1977). Moreover, in that instance the Government would have been entitled to comment on Beechum's refusal to answer, *see Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917), notwithstanding the prohibition on such comment where the privilege is properly invoked....

*Id.* at 909 (footnote omitted).

Here, appellant is in a very similar situation. Because Kalmbach had been granted use immunity for her testimony, she did not have a valid basis for refusing to testify. *Ullman v. United States*, 350 U.S. 422, 437, 76 S.Ct. 497, 506, 100 L.Ed. 511 (1956); *cf. Washburn v. State*, 299 S.W.2d 706, 708 (Tex.Cr.App.1957) (The Court held that it was improper for jury to hear witness's invocation of Fifth Amendment because immunity was only *offered* to the witness, not actually granted by the trial judge.). To the extent that State could have sought to compel Kalmbach's testimony, in lieu of allowing her to assert a non-existent privilege, appellant was not unfairly prejudiced.[6] Appellant's first, second, and third grounds for review are overruled.

■ In regard to appellant's fourth ground for review, the Court of Appeals held that appellant's trial counsel failed to preserve error related to the prosecutor's jury argument. At trial, counsel objected, as follows:

[MR. ROSENTHAL]: I submit to you that it is a fair deduction from the evidence that he did not do it [abuse complainant] in front of other people because Mrs. Annoot told him if he he [sic] did it again, she was going to report him to Harris County. That's a good reason to be secretive about it. I also submit to you one of the ways we have proof of his

guilt is his demeanor. As you have watched him during this trial in this room and·during his confession at the hospital and during his arrest—

MR. HILL [defense attorney]: I object to any reference to him [appellant] and his demeanor while in the courtroom. It's a violation of [his] right not to testify.

THE JUDGE: Overruled.

MR. ROSENTHAL [prosecutor]: —he apparently, is not very concerned, according to everybody that we have talked to, about this little boy's death. Yes, it's an emotional case, and I wish that we could have brought you more evidence.

The Court of Appeals disposed of this point of error as follows:

Appellant's fourth point of error asserts that the trial court erred in overruling his objection to the prosecutor's closing argument regarding appellant's demeanor.

An objection raised on appeal will not be considered if it varies from the objection made at trial. *Euziere v. State*, 648 S.W.2d 700, 703 (Tex.Cr.App.1983). Appellant's objection at trial was that the argument was a comment on appellant's failure to testify. His ground of error on appeal is that the argument went outside of the record. The Court of Criminal Appeals found this same mismatching of objection to be insufficient to preserve error in *Bouchillon v. State*, 540 S.W.2d 319, 322 (Tex.Cr.App.1976). Appellant has failed to preserve error for review.

Appellant's fourth point of error is overruled.

*Coffey*, 744 S.W.2d at 239.

Appellant argues that the context of events made the substance of the trial objection clear, and, once reaching the merits, the prosecutor's behavior is contrary to our

6. Even though constitutionally permissible in this instance, by calling Kalmbach to the witness stand, the State could have unfairly prejudiced appellant in a variety of ways. For example, it would have been error had the State asked the witness a series of damaging questions in such a way as to invite the jury to assume that the answers to each question would have been in the affirmative. See *Washburn*, 299 S.W.2d at 707–08. Appellant, however, does not argue that Kalmbach's testimony violated Tex.R.Cr.Evid. 403, nor would the record support such a claim.

decision in *Good v. State*, 723 S.W.2d 734 (Tex.Cr.App.1986). The State reurges its argument that appellant waived error and, alternatively argues that we should overrule our decision in *Good*.[7]

The Court of Appeals' reliance on *Euziere*, 648 S.W.2d at 703; and *Bouchillon*, 540 S.W.2d at 322, is well placed. In *Bouchillon*, the trial objection was that the prosecutor's closing argument was outside the record; on appeal, defendant claimed that the argument was a comment on his failure to testify. We held that the defendant had not preserved his appellate argument because it did not comport with the trial objection. *Id.* Similarly, in *Euziere*, the defendant failed to preserve an appellate argument that the prosecutor had argued improper extraneous offenses in his closing argument was waived. At trial, the defendant objected that the prosecutor's argument was "global, misleading, repetitive, and irrelevant." Nothing was presented for review because the appellate argument did not comport with the trial objection. See also, *Montoya v. State*, 744 S.W.2d 15, 33 (Tex.Cr.App.1987), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988); *Paster v. State*, 701 S.W.2d 843, 849 (Tex.Cr.App.1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1240, 89 L.Ed.2d 348 (1986); *Graham v. State*, 546 S.W.2d 605, 608 (Tex.Cr.App.1977); *Reece v. State*, 521 S.W.2d 633, 635 (Tex.Cr.App. 1975), for cases in which failure of appellate argument to comport with trial objection has barred review of jury arguments.

Because appellant's trial objection was that the jury argument was "a violation of his right not to testify" and the argument on appeal was that it commented on evidence not in the record, nothing is preserved for appellate review. Appellant's fourth ground for review is overruled.

The judgment of the Court of Appeals is affirmed.

MILLER, J., concurs with note:

I see little difference, in the impact on a jury of a witness invoking the Fifth Amendment, between whether that witness has a valid or (unknown to the jury) invalid Fifth Amendment claim. However, because of a lack of issues raised here, such as the importance to the State's case of the witness's testimony, lack of request of a jury instruction or limiting instruction to the jury by the defense, or intelligent contrast of current federal cases (see *Lindsey v. United States*, 484 U.S. 934, 108 S.Ct. 310, 98 L.Ed.2d 268 (1987) (White, J., dissenting to denial of certiorari)), I concur in the result.

TEAGUE, Judge, dissenting.

The record reflects that Raymond Edward Coffey, henceforth appellant, was convicted by the jury of causing injury to a child, Christopher Kalmbach, who was then 2½ years old, which occurred as a result of asphyxia due to aspiration of a foreign substance, namely, ground pepper, or, to put it another way: The 2½ year old Christopher died from aerial obstruction caused by the clots and clumps of ground pepper in his throat and lungs.

Patty Kalmbach, the natural mother of Christopher, who was appellant's live-in girl-friend, was also charged with the same offense but by separate indictment.

It appears to me that other than cite the reader to a few more cases than the court of appeals did, which I find are not on point, and thus will not distinguish them, the majority opinion merely "echoes" what the Houston First Court of Appeals stated when it overruled appellant's contention that it was improper for the trial judge in this cause to force Kalmbach, the mother of the 2½ year old victim, to verbalize her

---

**7.** The State wishes to challenge our statement in *Good* that a "defendant's nontestimonial demeanor is irrelevant to the issue of his guilt." *Good*, 723 S.W.2d at 737. Although the State cites such intriguing sources as *Face to Face with a Nose?*, 25 PEOPLE WEEKLY 57 (January 27, 1987); Gibson, *Body Language*, 62 PARENTS MAGAZINE 192 (April 1987); McCarthy, *Licking Interruptions: The Tongue Tip–Off*, 22 PSYCHOLOGY TODAY 16 (January 1988); Young, *Image Makers—Or Breakers*, 85 GLAMOUR 32 (October 1987), we decline to re-examine that holding.

refusal to testify for the State in the jury's presence, notwithstanding that it was conclusively shown out of the jury's presence that she was not going to testify for the State in the jury's presence. See *Coffey v. State*, 744 S.W.2d 235 (Tex.App.—Houston [1st] 1987).

The majority opinion, like the court of appeals did, holds that because Kalmbach had been granted "use" immunity [1] she did not have a valid basis for refusing to testify in the jury's presence, and thus it was not error for the trial judge to force her to verbalize her refusal to testify in the jury's presence, notwithstanding that it was conclusively shown that Kalmbach was not going to testify in the jury's presence.

The majority opinion also holds: "To the extent that the State could have sought to compel Kalmbach's testimony, in lieu of allowing her to assert a non-existent privilege, appellant was not unfairly prejudiced." I must ask: If it was not error, then what difference does it make whether appellant was or was not unfairly prejudiced?

The State's response to appellant's contentions regarding the trial judge's actions is the following: "Since [the mother] no longer had a privilege [not to testify], the State was entitled to call her as a witness, to question her, and to comment upon her failure to answer questions." (Page 11 of State's Appellate Brief.) I find it rather interesting that at no time does the State ever attempt to justify, by either case law, logic, or common sense, where it has been conclusively shown out of the jury's presence that the witness will not testify in the jury's presence, that it should still be permitted to call the witness in the presence of the jury and force the witness to refuse to testify in the jury's presence. Again, from this record, as far as I can tell, the following is the only justification that the State has offered to date for the trial judge's actions: "Since Patty Kalmbach no longer had a privilege, the State was entitled to call her as a witness, to question, and to comment upon her failure to answer questions...." (Page 11, State's Appellate Brief.) This, of course, under the circumstances of this case, is no legal justification for the trial judge to have forced Kalmbach to verbalize her refusal to testify in the jury's presence.

The record reflects that pursuant to the State's request, which was made during appellant's trial, but out of the jury's presence, the trial judge granted Kalmbach "use" immunity. Thereafter, notwithstanding this grant of immunity, or the threat of being held in contempt of court if she refused to testify, except for stating in the jury's presence her name and how her last name was spelled, Kalmbach refused to testify in the jury's presence for the State because, as she demonstrated outside the jury's presence, she believed that such would have tended to incriminate her.[2]

---

**1.** For a brief discussion of the two types of immunity, "use" and "transactional," see 3 *Texas Criminal Practice Guide*, § 70.04. "Use" immunity, which was granted Kalmbach in this cause, "conveys immunity from use of the compelled testimony in subsequent criminal proceedings, as well as immunity from use of evidence derived from the testimony...." *Id.*, § 70.04[2][b].

**2.** It is now axiomatic that "a person may be compelled to testify if he or she is given protection against self-incrimination that is coextensive with that granted by the Fifth Amendment." 3 *Texas Criminal Practice Guide*, § 70.04[1]. I pause to point out that the State's request to the trial judge to grant Kalmbach "use" immunity did not cover "the consequences of the transaction," but was limited to "truthful" testimony, no matter how much or how little such related to Kalmbach's culpability to the charged of-

fense. Kalmbach's attorney objected to the State's request, incorrectly asserting that "under the laws of this State the only immunity which may be offered and approved by the Court is transactional immunity." Counsel told the trial judge that he had "instructed [Kalmbach] accordingly, [and] also [had] instructed her not to testify prior to the granting of immunity by the Court ... I object and ask the Court to require the State to offer transactional immunity rather than use immunity." The trial judge overruled the objection, denied the attorney's request, and granted the State's request, to the extent of any testimony that Kalmbach might give during appellant's trial, "and in all criminal proceedings had [in this jurisdiction or any other jurisdiction] after the date of entry hereof, but [such grant of immunity] does not extend to the offense of perjury or aggravated perjury committed during such testimony, [nor for contempt of court]." The indictment that was then pending

After the trial judge made it clear to everyone that he had granted Kalmbach "use" immunity, Kalmbach's attorney then informed her, inter alia, that if she refused to testify the trial judge probably would find her guilty of contempt of court, which he did.

Outside of the jury's presence, after the trial judge granted Kalmbach "use" immunity, the prosecutor then attempted to question Kalmbach, but, except for stating her name, the fact that none of her children then lived with her, and the fact that she was the mother of the 2½ year old victim, she refused to answer the prosecutor's questions, "under the grounds that it's going to incriminate me against my rights of the Fifth Amendment of the Constitution of the United States, I refuse to answer that question."

I find that appellant's present counsel is quite correct when he stated the following in the petition for discretionary review that he filed on behalf of appellant: "[By this time it was] crystal clear that [Kalmbach] did not intend to testify before the jury." (Page 1, Appellant's Petition for Discretionary Review.)

Thereafter, but out of the jury's presence, Kalmbach was held in contempt of court by the trial judge for refusing to answer the prosecutor's questions.

After the jury was returned to the courtroom, and over objection, the prosecutor called Kalmbach to testify in the jury's presence, but, except for stating her name and how her last name was spelled, Kalmbach continued to refuse to testify. The prosecutor later during the trial, again in the jury's presence, and again over objection, twice more called Kalmbach to testify for the State, but she again refused to testify for the State.

Contrary to the majority opinion, I am unable to state, without any reservations,

that the jury did not draw a negative inference to appellant from Kalmbach's verbally expressing in the jury's presence her refusal to testify for the State, although, of course, I cannot conclusively state what that negative inference might be. The majority opinion states: "A jury may consider an invocation of a Fifth Amendment privilege under some circumstances." (Page 4 of slip opinion.) Unfortunately, all of the cases that the majority opinion cites and discusses in support of its statement are not on point to the issue before this Court to resolve.

What the majority opinion overlooks is the rule that fits this situation. When, out of the jury's presence, Kalmbach made it clear to everyone that she was not going to testify for the State, she then became an "unavailable" witness for the State: "If a witness simply refuses to testify, despite the bringing to bear upon [her] of all appropriate judicial pressures, the conclusion that as a practical matter he is unavailable can scarcely be avoided, and that is the holding of the great weight of authority." (Footnote and citations omitted.) *McCormick on Evidence*, 2nd Ed., at page 612.

Thus, it would have been proper for the State, to account for Kalmbach's absence as a witness for the State, to have put on evidence in the jury's presence why Kalmbach was not called by the State to testify for the State. See and compare what occurred in *Bodde v. State*, 568 S.W.2d 344, 351–352 (Tex.Cr.App.1978). For further discussion of the above rule, and examples of valid reasons why the prosecution was entitled to explain to the jury why a particular witness was absent when called to testify for the State, see 2 Wigmore, *Evidence in Trials at Common Law* (1979 edition), § 290.

In this instance, just as occurred in *Bodde*, supra, it would have been permissi-

---

against Kalmbach was not dismissed. However, the trial judge told Kalmbach: "At a later trial concerning yourself as the accused, of course, your right against self-incrimination would stand at that time. You will have the right not to testify at that time. Do you understand that?," with Kalmbach responding: "Yes, sir." Appellant did not argue in the court of

appeals, nor does he argue in this Court, the fact that the indictment against Kalmbach was not dismissed, and was pending when she made known to the trial judge out of the jury's presence that she was not going to testify for the State, affected her decision not to testify for the State in the jury's presence; therefore, it is not necessary to discuss that issue.

ble for the trial judge to have allowed the State to put on the prosecuting attorney or a proper witness who had personal knowledge of the fact that notwithstanding the fact that the trial judge granted Kalmbach "use" immunity, she still refused to testify for the State. Of course, such witness would have been subject to the usual rules that govern cross-examination of a witness.

For all of the above reasons, I respectfully dissent to the majority's holding that the trial judge did not err in forcing Kalmbach to verbalize her refusal to testify for the State in the jury's presence.