Affirmed and Memorandum Opinion filed February 27, 2007








Affirmed and Memorandum Opinion filed February 27, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-01195-CR

_______________

 

DAMIEN LAMONT ALCORN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 228th District Court

Harris County, Texas

Trial Court Cause No. 1010324

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N








A jury
found appellant, Damien Lamont Alcorn, guilty of capital murder and sentenced
him to life in prison.  In four issues, appellant contends (1) the only
evidence connecting him to the crime was the testimony of an accomplice,
rendering the evidence insufficient for a finding of guilt without
corroborating evidence, (2) a co-defendant=s invocation of his right to remain
silent was imputed to appellant, (3) the trial erred by admitting extraneous
offenses and other bad acts through the testimony of a  third-party witness,
and (4) the trial court erred by admitting extraneous offenses and other bad
acts described in appellant=s recorded police interview.  Because all dispositive issues are
clearly settled in law, we issue this memorandum opinion and affirm. See Tex. R. App. P. 47.4. 

I.  Background 

 Appellant and
co-defendant, Zachary Terrell, were childhood friends.  Apparently, they spent
much of their youth committing theft together.  During September  2004, Zachary
married Tanya Terrell.  During November 2004, Tanya and Zachary=s cousin, Leticia
Terrell, started working at a Goodwill store.  On December 13, 2004, after the
Goodwill store closed, Tanya and store manager, William Musick, were the only
two persons that remained.  Tanya was waiting for her husband to take her home. 
While they were counting the money, an African-American man, who wore a large
jacket and black skull cap and had pantyhose over his face, entered through an
unlocked door in the rear area of the store. He was holding a gun which Tanya
recognized as having been previously owned by Zachary.  He demanded the money. 
After taking the money, the man shot Musick in the head.  Tanya called 9-1-1. 
When the police arrived, Musick was dead. 

While these events were unfolding, Richard Heid was in a
near-by restaurant.  He approached police when they entered the parking area,
and told them he had seen an African-American man in a car which was parked in
reverse position next to his car.  He thought the situation looked suspicious. 
Heid told police that he subsequently saw another African-American man wearing
a large jacket run out of the Goodwill and get into the car.  The
African-American men then drove away.   While standing in the parking lot
talking to police, Heid saw the same car with the same driver enter the parking
lot.  Zachary was identified as the driver. 








Tanya was interviewed by two officers at the police
station.  During the second interview, she identified appellant from a photo
spread as the person who entered the Goodwill and shot Musick.  Officers then
interviewed Zachary.  Subsequently, Zachary led officers to the assailant=s gun which was
hidden under some bushes in an apartment complex parking lot.  After
interviewing Zachary and conducting some  investigation, police arrested
appellant.

II.  Accomplice Witness Testimony

In his first issue, appellant contends that Tanya was an
accomplice.  Appellant further asserts that Tanya=s testimony was
the only evidence that connected him with the crime.  Under the Aaccomplice-witness
rule,@ a defendant
cannot be convicted based on the testimony of an accomplice unless the
testimony is corroborated by other evidence tending to connect the defendant
with the offense committed.  Tex. Code
of Crim. Proc. Ann. Art. 38.14 (Vernon 2005).  Appellant argues that the
remaining evidence is insufficient to connect him to the charged offense if
Tanya=s testimony were
excluded under the Aaccomplice-witness rule.@  In response, the
State contends the trial court properly found Tanya was not an accomplice as a
matter of law and submitted the question to the jury.  








An accomplice is one who participates with a defendant
before, during, or after commission of a crime, and acts with the required
culpable mental state.  Cocke v. State, 201 S.W.3d 744, 748 (Tex. Crim.
App. 2006);  Paredes v. State, 129 S.W.3d 530, 536 (Tex. Crim. App.
2004) (citing McFarland v. State, 928 S.W.2d 482, 514 (Tex. Crim. App.
1996)).  Participation requires an affirmative act that promotes commission of
the charged offense.  Cocke, 201 S.W.3d at 748; Paredes, 129
S.W.3d at 536.  Mere presence during the commission of the crime is not
enough.  Soloman v. State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)
(citing Medina v. State, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999)). One
is not an accomplice for knowing about a crime and failing to disclose or even
concealing a crime.  Blake v. State, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998). In this case, the trial court
charged the jury with the responsibility of determining whether Tanya was an
accomplice as a matter of fact.[1] 









A witness may be an accomplice either as a matter of law or
matter of fact.  Cocke, 201 S.W.3d at 747;  Blake, 971 S.W.2d at
455.  A witness is an accomplice as a matter of law when there exists no doubt
regarding his participation, or when the evidence clearly shows that he is an
accomplice.  Paredes, 129 S.W.3d at 536 (citing Blake, 971 S.W.2d
at 455). An accomplice as a matter of law is one who is susceptible to
prosecution for the offense with which the accused is charged or a
lesser-included offense.  Id. (citing Blake, 971 S.W.2d at 455); Ex
parte Zepeda, 819 S.W.2d 874, 876 (Tex. Crim. App. 1991).  The test is
whether there is sufficient evidence in the record to support a charge against
the witness alleged to be an accomplice for the offense.  Blake, 971
S.W.2d at 455.  Whether the witness is actually charged with a crime for
participation in the offense is irrelevant to the determination of accomplice
status.  Id.  The evidence in  the record is what matters.  Id.  When
a witness is deemed an accomplice as a matter of law, the trial court is under
a duty to instruct the jury. Id.  In contrast, if the evidence presented
by the parties is conflicting or unclear as to whether a witness is an
accomplice, then the trial court must allow the jury to determine whether the
inculpatory witness is an accomplice as a matter of fact under instructions
defining the term Aaccomplice.@  Id.  

      
Appellant concedes Tanya could not have been charged with capital murder;
however, he contends she is an accomplice as a matter of law because she could
be charged with the lesser-included offense of robbery.  Robbery may be a
lesser-included offense of capital murder.[2] 
See Holiday v. State, 14 S.W.3d 784, 788 (Tex. App.CHouston [1st
Dist.] 2000, pet. ref=d).  To be charged with a lesser-included
offense, the witness must have had specific intent to promote or assist in the
commission of the offense.  Hanson v. State, 55 S.W.3d 681, 689 (Tex.
App.CAustin 2001, pet.
ref=d).  








Tanya testified that she had never met appellant before the
events in question.  The only time she came close to meeting him was in
September 2004, when she and Zachary were married.  Zachary drove by appellant=s residence. 
Tanya stayed in the car while Zachary told appellant that he was married. 
Tanya began her employment at Goodwill store during November 2004. Zachary=s cousin, Leticia,
started working there around the same time.  However, a few weeks later,
Leticia was fired for stealing and being disrespectful to the managers. Leticia
had a lengthy friendship with Zachary and appellant, and they Agrew-up@ together.  Tanya
suggested Leticia gave appellant inside information about the store. During
late November 2004 appellant called Zachary to tell him that he had heard the
Goodwill store where Tanya worked was Aan easy lick.@ Tanya  told her
Zachary that she did not want him to get involved in stealing again, and she
did not want to be caught in the middle.  Appellant called Zachary sometime
after the first conversation, and Tanya heard Zachary tell appellant, AI told you, she
not down.@  After the robbery, these prior events supported
Tanya=s belief that
Zachary was involved.  Consequently, she admitted that some of her initial
descriptions of the intruder during her first police interview were not
accurate.  However, she testified that her statements during the second police
interview and during trial were true.    

Appellant testified he never met Tanya. He admitted to a
friendship with Leticia, but denied knowing that she had been fired.  He
testified Zachary was the first person to mention that the Goodwill store was
an easy place to rob, and he assumed that Zachary received the information from
his wife.  Appellant testified that he did not go to Goodwill that night;
instead Zachary came by asking if he wanted to go, but appellant told Zachary
that he did not want to go.  In addition, appellant=s cousin, Benny
Lawson,  testified that appellant was playing dice and watching a football game
with him the night of the robbery. 

Appellant
blamed Zachary and Tanya during his initial interview with the police.  He said
Zachary initiated conversation about robbing the Goodwill.  Appellant further
asserted that Zachary told him he would ask ADre@ if appellant refused to go.  
Appellant  told police that Tanya planned to accomplish the robbery alone by
just pushing Musick down onto the floor and taking the money.  However, the
officer who conducted the interview testified that Tanya was seven-months
pregnant.








In sum, there is conflicting evidence regarding whether
Tayna provided inside information about the store assisting Zachery and
appellant in committing the robbery.  It is also unclear whether Tanya left one
of the doors unlocked or Musick forgot to lock one of the doors.  Obviously,
Tanya was present when the crime occurred.  Moreover, she initially attempted
to conceal her knowledge of the intruder during her first police interview. 
However, mere presence, knowledge, failure to disclose, and concealment of a
crime do not make an individual an accomplice.  See Soloman, 49 S.W.3d
at 361;  Blake, 971 S.W.2d at 454. 

We hold the trial court correctly gave the jury the
responsibility of determining whether Tanya was an accomplice.  See Maynard
v. State, 166 S.W.3d 403, 411 (Tex. App.CAustin 2005, pet.
ref=d).  Accordingly,
appellant=s first issue is overruled.  

III.  Co-defendant=s Fifth
Amendment Right To Remain Silent

In his
second issue, appellant contends that  Zachary=s invocation of the Fifth Amendment
right Ato silence@ was improperly imputed to
appellant.  Specifically, appellant contends the State sought to impute guilt
upon appellant by calling Zachary, who had been granted use immunity, to
testify.  The trial court admonished Zachary that he had been given use
immunity; consequently, he could not assert a Fifth Amendment privilege. 
Zachary was also informed that each time he invoked the Fifth Amendment, he
would be held in contempt. Despite this admonishment, Zachary refused to answer
every question.  After each refusal, the trial judge stated he was holding
Zachary in contempt of court.  








A
witness who has been granted use immunity for his testimony does not have a
valid basis for refusing to testify.  Coffey v. State, 796 S.W.2d 175,
179 (Tex. Crim. App. 1990); see also Butterfield v. State, 992 S.W.2d
448, 449B50 (Tex. Crim. App. 1999); Perez
v. State, 41 S.W.3d 712, 718B19 (Tex. App.CCorpus Christi 2001, no pet.).   In Coffey,
a witness called by the State was granted use immunity for her testimony but
invoked her Fifth Amendment privilege against self-incrimination in front of
the jury.  796 S.W.2d at 176B77.  The court of appeals held that
the witness could not invoke her Fifth Amendment right because she had been
granted use immunity for her testimony.  Id.  at 177.  On appeal to the
to Court of Criminal Appeals, the defendant argued that the jury would construe
the witness=s refusal to testify in a manner that would be detrimental to the
defendant.  Id.  Affirming the court of appeals, the court noted the Afatal flaw@ in the appellant=s argument was the Aunstated assumption that any negative
inference made by a jury when a witness refuses to testify is improper.@ Id. at 178.  The court
explained the that the witness did not have a valid basis for refusing to
testify because the grant of use immunity resulted in the loss of the witness=s Fifth Amendment privilege.  Id. at
179 (citing Ullman v. United States, 350 U.S. 422, 437 (1956)). 

Accordingly,
we hold appellant was not unfairly prejudiced. Appellant=s second issue is overrruled.  

IV.  Extraneous Offenses Admitted Through Third-Party Witness

In his
third issue, appellant contends the trial court abused its discretion by
allowing Kimberly Templeton, appellant=s live-in girlfriend, to testify
about appellant=s extraneous offenses and other bad acts.  During -the State=s direct examination of Templeton,
the following exchange occurred:

Q: During
the course of the time you=ve lived
together, did he give you money?

A: Yes, ma=am, he has. 

Q: And
where did he get the money from? 

A:
Sometimes he works.  Sometimes he went out stealing.  

Q: Okay. 
And where did he go stealing?  

A:
Everywhere I guess.  

Q: Okay. 
What kind of places?  

[APPELLANT]: Your Honor, I object to this line of questioning.  She=s trying to impeach the defendant through this
witness.  

THE COURT: That=s sustained.  

[THE STATE]: Well B 

THE COURT: Come forward. 

Q: (by [THE
STATE]): So, some of the money that he gave you was from you stealing and some
of it was from his off-and-on jobs?  

A: Yes, ma=am.  








Q: Now,
[appellant] told someone that he hadn=t
worked since June when he committed that robbery in December.  He had not
worked anytime in those six months.  Would you say that=s an accurate statement? 

A: Yes, ma=am.  

Q: And so,
how is [appellant] helping you financially? 

A: I just
told you, he steals. 

After
this line of questioning, appellant=s only objection came after the State
asked Templeton why she never called the police to tell them appellant had been
stealing.  This objection was on the grounds of relevancy and improper
questioning and impeachment. 

To preserve error for appellate review, the complaining
party must make a timely and specific objection and obtain a ruling on the objection. 
Tex. R. App. P. 33.1;  Wilson
v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (citing Broxton v.
State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995)).  The objection must be
made at the earliest opportunity.  Id. (citing Turner v. State,
805 S.W.2d 423, 431 (Tex. Crim. App. 1991)).  On appeal, the point of error
must comport with the objection made at trial.  Id. (citing Thomas v.
State, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986)). 

Appellant
made no extraneous offense objections during Templeton=s testimony. The first objection
pertained to improper impeachment.  The next objection was responsive to the
State=s inquiry regarding why Templeton had
never called the police.  Appellant=s counsel based his objection on
relevance and improper impeachment. Because no timely extraneous offense
objection was made during Templeton=s testimony, we overrule appellant=s third issue.    

V.  Extraneous Offenses Described In Recorded
Police Interview 








In his fourth issue, appellant argues the trial court
improperly admitted evidence of extraneous offenses that appellant mentioned
during a tape-recorded police interview.  We need not explore the theories of
admissibility because we conclude the error, if any, committed by the trial
court was harmless.  Therefore, for purposes of this analysis, we will assume the
trial court committed error.    

A non-constitutional error that does not affect substantial
rights must be disregarded.  Tex. R.
App. P. 44.2(b).  The erroneous admission of an extraneous offense is
non-constitutional error.  Johnson v. State, 84 S.W.3d 726, 729 (Tex.
App.CHouston [1st
Dist.] 2002, pet. ref=d).  Substantial rights are not affected
by the erroneous admission of evidence Aif the appellate
court, after examining the record as a whole, has fair assurance that the error
did not influence the jury, or had but a slight effect.@  Motilla v.
State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  In conducting the harm
analysis, an appellate court should consider everything in the record,
including any testimony or physical evidence admitted for the jury=s consideration,
the trial court=s instructions to the jury, the State=s theory, any
defensive theories, closing arguments, and even voir dire if material to the
appellant=s claim. Id. at 355B56;  Morales v.
State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).  In assessing harm, the
factors to be considered are the nature of the evidence supporting the verdict,
the character of the alleged error, and how the evidence might be considered in
connection with the other evidence in the case.  Motilla, 78 S.W.3d at
356; Morales, 32 S.W.3d at 867. The weight of the evidence of appellant=s guilt is also
relevant.  Motilla, 78 S.W.3d at 359B60.  Moreover,
improper admission of evidence does not constitute reversible error if the same
facts are proved by other properly admitted evidence.  See Brooks v. State,
990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (en banc) (holding that any error in admitting
hearsay evidence was harmless in light of other properly admitted evidence
proving the same fact).








After examining the record as a whole, we find the error,
if any, did not influence the jury or had but a slight effect and did not
affect any substantial right.  First, the extraneous offenses contained in the
police interview transcript were later properly admitted at trial through
testimony from appellant and Kimberly Templeton.  During the police interview,
appellant said he had stolen cars, radios, and speakers and was previously
arrested for burglary of a store with Zachary.  At trial, appellant testified
without objection regarding the same extraneous offenses contained in the police
interview and in greater detail.  He testified that he had been arrested for
burglary of a building with Zachary, convicted of burglary of a habitation, and
arrested for stealing two cars. He also testified that he supported himself by
stealing radios, speakers, and rims.  Furthermore, Templeton, appellant=s live-in
girlfriend, testified without a timely objection (addressed in our analysis of
appellant=s third issue) how appellant got money to give her: ASometimes he
works.  Sometimes he went out stealing.@ 

Further, there is overwhelming evidence establishing
appellant=s guilt.  Tanya, the only person present at the time
of the incident, identified appellant in a photo-spread later that night as the
perpetrator who shot Musick. 

Appellant=s cell-mate, Aaron Charles, testified that
appellant said Zachary had called him about robbing the Goodwill.  Charles
heard appellant admit that Zachary picked him up, bought gloves and pantyhose
on the way to the Goodwill store, and loaned appellant a skull cap.  Appellant
told Charles that the gun fired on his way out of the store.  Appellant also
told Charles he was worried about hair follicles which might be in the skull
cap that fell off when he ran out of the store.  Finally, Charles also
testified that appellant showed him pictures of Christmas toys and clothes he
bought for his children with the robbery proceeds. 

The black skull cap was recovered at the scene.  Houston
Police Officer James Kay testified the police dog followed the scent of the
perpetrator from the Goodwill to the cap to the perpetrator=s car.  Tanya
testified she recognized the gun used in the crime because it previously
belonged to Zachary.  Zachary led police to the hidden gun. During his second
interview with police, appellant admitted that Zachary did Apresent him a gun.@  








 

Finally, the jury received a limiting instruction that
further reduced the risk the jury might misapply the evidence during its
deliberations.[3] 
See Jones v. State, 944 S.W.3d 653, 654 (Tex. Crim. App. 1996). 

Considering the record as a whole, we have fair assurance
that admission of the extraneous offense evidence in the police interviews did
not influence the jury or had but a slight effect.  See Motilla, 78
S.W.3d at 355. Accordingly, we overrule appellant=s fourth issue.  The judgment of the trial court is
affirmed.

 

 

/s/        Charles
W. Seymore

Justice

 

 

 

Judgment rendered and Memorandum Opinion
filed February 27, 2007.

Panel consists of Chief Justice Hedges and
Justices Yates and Seymore.

Do Not
Publish C Tex.
R. App. P. 47.4

 









[1]  The jury instruction was stated as follows: 

You are instructed that a conviction cannot be had
upon the testimony of an accomplice unless the jury first believes that the
accomplice=s testimony is true and that it shows the defendant is
guilty of the offense charged against him, and even then you cannot convict
unless the accomplice=s testimony is corroborated by other evidence tending
to connect the defendant with the offense charged, and the corroboration is not
sufficient if it merely shows the commission of the offense, but it must tend
to connect the defendant with its commission.  

 

Therefore,
if you believe from the evidence beyond a reasonable doubt that an offense was
committed and you further believe from the evidence that the witness,
Danielethi ATanya@ Terrell, was
an accomplice, or you have a reasonable doubt whether she was or not, . . .
then you cannot convict the defendant upon the testimony of the said Danielethi
ATanya@ Terrell unless
you further believe that the testimony of Danielethi ATanya@ Terrell is
true and that is shows the defendant is guilty as charged in the indictment;
and even then  you cannot convict the defendant unless you further believe that
there is other evidence in the case, outside of the testimony of Danielethi ATanya@ Terrell
tending to connect the defendant with the offense charged in the indictment,
and then from all the evidence you must believe beyond a reasonable doubt that
the defendant is guilty. 





[2]  A person commits robbery if in the course of committing a theft, the
person (1) intentionally, knowingly, or recklessly causes bodily injury to
another; or (2) intentionally or knowingly threatens or places another in fear
of imminent bodily injury or death.  Tex.
Penal Code Ann. ' 29.02(a) (Vernon 2003). 





[3]           The jury received the following instruction as to extraneous
offenses:  

You are further instructed that if
there is any evidence before you in this case regarding the defendant=s committing an alleged offense or
offenses other than the offense alleged against him in the indictment in this
case, you cannot consider such evidence for any purpose unless you find and
believe beyond a reasonable doubt that the defendant committed such other
offense or offenses, if any, and even then you may only consider the same in
determining the motive, knowledge, intent, and defendant=s relationship with other
individuals in the case, if any, in connection with the offense, if any,
alleged against him in the indictment and for no other purpose.