Affirmed and Plurality and Concurring Opinions filed September 27, 2007








Affirmed and Plurality and Concurring Opinions filed September 27, 2007.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00612-CR

_______________

 

SALVADOR VIDAL MARTINEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 174th District Court

Harris County, Texas

Trial Court Cause No. 997,759

                                                                                                                                               


 

P L U R A L I T Y  O P I N I O N

 

Salvador Vidal Martinez appeals a
conviction for capital murder[1] on the ground
that his Sixth Amendment right to confrontation was violated by the trial court
admitting into evidence, over his objection, the custodial statement of an
accomplice, Ronald Flores, who was unavailable to testify at trial and whom
appellant had no prior opportunity to cross-examine.  We affirm.








                                                            Standard
of Review

Although evidentiary rulings are
generally reviewed for abuse of discretion, we review a constitutional legal
ruling de novo.  See Wall v. State, 184 S.W.3d 730, 742B43 (Tex. Crim. App. 2006).  In all
criminal prosecutions, an accused has the right to be confronted with the
witness against him.  U.S. Const. Amend. VI.  Therefore, Atestimonial@ statements of a witness who does not
appear at trial may not be admitted into evidence unless the witness is
unavailable to testify and the defendant has had a prior opportunity to
cross-examine that witness.  Crawford v. Washington, 541 U.S. 36, 68-69
(2004).

In this case, the State and appellant
agree that Flores=s statement was Atestimonial@ because it was the result of police
interrogation, but they dispute whether Flores was unavailable to testify. 
Flores was physically present at trial, had use immunity,[2]
and had no legitimate Fifth Amendment privilege (because he had already been
convicted of the same offense), but he refused to testify.  When the court
questioned Flores=s appointed counsel about this, his counsel informed the
court that Flores would refuse to testify even if held in contempt.  Although
the trial court offered to do so, neither the State nor appellant=s counsel requested that Flores be
brought into the courtroom to testify.  Over appellant=s Confrontation Clause objection, the
trial court ruled that Flores=s statement was admissible.[3]

                                                                         Error








To whatever extent a defendant may
waive his right to confrontation by declining to cross-examine an available
witness, the refusal of a witness to testify (whether rightly or wrongly) is
not such a waiver and defeats the right of confrontation just as much as the
unavailability of a witness to testify.  However, in addressing an analogous
problem, the United States Supreme Court has said:

Respondents
in both cases, joined by a number of their amici, contend that the nature of
the offenses charged in these two cases-domestic violence-requires greater
flexibility in the use of testimonial evidence.  This particular type of crime
is notoriously susceptible to intimidation or coercion of the victim to ensure
that she does not testify at trial.  When this occurs, the Confrontation Clause
gives the criminal a windfall.  We may not, however, vitiate constitutional
guarantees when they have the effect of allowing the guilty to go free.  But
when defendants seek to undermine the judicial process by procuring or coercing
silence from witnesses and victims, the Sixth Amendment does not require courts
to acquiesce. . . .  We reiterate . . . that Athe rule of forfeiture by wrongdoing
. . . extinguishes confrontation claims on essentially equitable grounds.@  That is, one who obtains the
absence of a witness by wrongdoing forfeits the constitutional right to
confrontation.

*          *          *          *

We have determined that, absent a
finding of forfeiture by wrongdoing, the Sixth Amendment operates to exclude
[the challenged] affidavit.

Davis v. Washington, 126 S.Ct. 2266, 2279B80 (2006) (citations omitted).  Because
the State has not alleged a forfeiture by wrongdoing by appellant, the
foregoing language in Davis indicates that the admission of Flores=s statement was a Confrontation
Clause violation even if his refusal to testify was wrongful and prevented the
admission of reliable evidence.  However, because we conclude below that any
error in admitting this evidence was harmless, we need not reach a holding on
error.  See, e.g., Taylor v. State, __ S.W.3d __, __ (Tex. Crim. App.
2007) (holding that asserted error was harmless without concluding whether it
was error).

                                                                         Harm








Constitutional error that is subject
to harmless error review requires reversal of the conviction unless we
determine beyond a reasonable doubt that the error did not contribute to the
conviction.  Tex. R. App. P. 44.2(a).  In this context, the ultimate question
is whether the asserted error, within the context of the entire trial, moved
the jury from a state of non-persuasion to one of persuasion on a particular
issue.  Davis v. State, 203 S.W.3d 845, 852B53 (Tex. Crim. App. 2006), cert
denied, 127 S.Ct. 2037 (2007).  The relevant considerations include: (1)
the importance of the hearsay statements to the State=s case; (2) whether the hearsay
evidence was cumulative of other evidence; (3) the presence or absence of
evidence corroborating or contradicting the hearsay testimony on material
points; and (4) the overall strength of the prosecution=s case.  Id.[4]

The evidence in this case,
independent of Flores=s statement, included the following. Just before the
shooting, Anthony Joiner looked out an apartment window and observed the
complainant talking to the driver of a maroon Ford Taurus station wagon in the
parking lot of the apartment complex.  After returning to watching television,
Joiner heard a gunshot, looked out the window, and saw the complainant lying on
the ground and the station wagon speeding off.

An apartment security guard, John
Westerfield, also heard a loud sound as if a car had backfired, saw a car
stopped on the property, and saw the complainant lying on the ground. The
apartment complex security video showed that a maroon station wagon had entered
the complex and exited the complex at a high rate of speed, but the car=s license plate and the images of the
driver and passenger could not be seen.

Police later received a tip on a
motel where Flores could be found and brought him and Kristen Simmons (who was
with Flores at the motel) in for questioning.  Flores was arrested the
following day.  On the day after that, Simmons informed the police that
appellant had made statements to her while being transported in the police car.








Simmons testified that she had been
with appellant and Flores at the motel when the police came.  After being
questioned about the murder at the Homicide Division, Simmons and appellant
were transported together to the Mykawa juvenile facility.  While in the police
car, appellant proudly told Simmons that he had Ashot that fool@ with a .44.  Officer Michael Lyons
testified that the complainant had been shot with a .44 caliber weapon.

Appellant claims that the admission
of Flores=s statement was harmful in that the State used his confession as more
than mere testimony against appellant.  Specifically, appellant argues that,
based on Flores=s statement, the jury could have concluded that the shooting
of the complainant was merely one in a string of Ajackings@ Flores committed together with any
of the youths who were with him in the motel room.  Additionally, appellant
contends that the jury=s verdict was compromised because both Flores and Simmons
were under the influence of substances which altered their ability to perceive
the events they later stated as evidence in the case.








Flores=s statement[5]
was unquestionably important to the State=s case in corroborating the evidence
provided by other witnesses at trail, but was largely cumulative of that
evidence.  In addition, even excluding Flores=s statement, the evidence was amply
sufficient to support the conviction, and the evidence that was material to
proving appellant committed the offense was not strongly controverted or
impeached.  Therefore, we can find no basis to conclude that the error in
admitting Flores=s statement, within the context of the entire trial, could
have moved the jury from a state of non-persuasion to one of persuasion on any
material issue.  Accordingly, that error was harmless beyond a reasonable
doubt, appellant=s sole issue is overruled, and the judgment of the trial
court is affirmed.

 

 

/s/        Richard H. Edelman

Senior Justice

 

Judgment rendered and Plurality and
Concurring Opinions filed September 27, 2007.

Panel consists of Justices Fowler,
Frost, and Edelman.*  (Frost, J., concurring)
(Fowler, J., concurring without an opinion).

Do not publish C Tex.
R. App. P. 47.2(b).









[1]           A jury convicted appellant of capital
murder and the trial court assessed punishment at life imprisonment.





[2]           A witness who has been granted use immunity
for his testimony does not have a valid basis for refusing to testify.  See
Coffey v. State, 796 S.W.2d 175, 179 (Tex. Crim. App. 1990).





[3]           The trial court stated that it would be
futile and inappropriate to put Flores on the stand if he intended to invoke
his Fifth Amendment right in front of the jury, but also expressed concern that
Flores was using Crawford to obstruct justice by simply refusing to
testify even though he was available.





[4]           However, we may not speculate as to whether
cross-examination would have been effective or not had it occurred.  Id.
at 851.





[5]           The statement Flores made
stated in part:

Prior to and during the making of this statement, I
knowingly, intelligently, and voluntarily waive the rights set out above and
make the following voluntary statement:  My name is, Ronald Herman Flores, and
I am 18 years old.  [Appellant] told me that a few weeks ago he had a .44
handgun.  One day I bought a car, a red Ford Taurus . . . .  One day me and
[appellant] were trying to make some money.  I knew that at Hunter=s Forest it was a lot of dope dealers.  We thought
that we could jack someone for their crack so we could sell it and make some
money.  So, we drove to Hunter=s Forest and I
was driving.  I used to live there before, so I drove slow and the security
guard let me pass through.  I went there about 9:00 p.m. to 11:00 p.m.  I
parked reversed [sic] by the gate . . . .  I rolled down my window . . . .  The
guy walked up to my window and said, quote: You all looking for that work?  We
both said yes.  So I told him, don=t
move and give me the work.  I had a .25 caliber in my hand and [appellant] had
a .44 in his hand.  We both told him don=t
move, and I reached out the window with the .25 in my right hand.  The car was
still on with the lights off.  With my right hand out the window, I learned
[sic] back and tried to shoot him, but the gun did not go off.  I saw
[appellant=s] pistol across my body and he shot one time.  I saw
the guy fall, so I put the car in drive and took off.  I made a right and went
around the apartment complex and I rushed out the gate. . . .  The next day I
told my girlfriend that we had killed a guy.

 

 

 





*           Senior
Justice Richard H. Edelman sitting by assignment.