In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00140-CR


______________________________




LAWRENCE DEMETRIUS SMITH, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 08-0306X




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 The question presented here is whether a witness' invocation of his Fifth Amendment (1) right
to remain silent, when he is not a co-defendant or co-indictee, presents such unfairly prejudicial
evidence to a jury that a mistrial is mandated. 

 Lawrence Demetrius Smith was tried before a Harrison County jury and convicted of murder. 
He was sentenced to sixty years' imprisonment. During the guilt/innocence phase of the trial, the
State called Lee Edward James to testify, and in the presence of the jury, James refused to answer
any questions beyond his name and invoked his Fifth Amendment privilege. Smith moved for a
mistrial, and the trial court denied the motion.

 On appeal, Smith argues that the trial court erred in denying his motion for a mistrial because
James' invocation of his Fifth Amendment privilege in the presence of the jury irreversibly
prejudiced him. 

 We affirm the trial court's denial of the motion because James' invocation of his Fifth
Amendment rights did not prejudice Smith.

I. Facts

 During the guilt/innocence phase of the trial, the State called James to the stand. After James
was sworn and seated, the following exchange between the State and James took place in the
presence of the jury:

 Q How are you doing, Lee? 

 Could you do me a favor? Would you introduce yourself to the jury,
please, sir.

 

 A My name is Lee Edward James, a/k/a Tigerman.

 

 Q Lee, if you would, pull that microphone over in front of you, please,
sir.

 

 A (Complies.)

 

 Q Mr. James, I want to take your attention first, just so the jury -- 

 

 A Before we get started, I'd like to just plead the Fifth.

 

 Q I understand that. You and [I] have discussed that, that you can't
plead the Fifth. 

 You understand that?


 A I ain't got nothing to say here.

 

 Q You don't want to say anything?

 

 A No, sir.

 

 Q Okay. Do you remember giving a statement to Lieutenant Patrick
Clayton of the Marshall Police Department? Did you give him a statement?

 

 A I don't have nothing to say.

 

 [SMITH'S COUNSEL]: Your Honor, I think at this point in time, I
would request that this man be furnished an attorney for advising him concerning the
exercise of his Fifth and that no further questions be asked until that is determined.

 

 . . . . 


 [THE STATE]: He has not been accused of a crime; therefore, he's
not entitled to counsel. He's not entitled by law to plead the Fifth if you're not
accused of a crime.

 

 [SMITH'S COUNSEL]: He's certainly entitled to counsel to
determine if he's got a danger there, Judge.

 

 THE COURT: Okay. Mr. Black, he is entitled to counsel at least to
explore that question. Normally, there's someone sitting in the courtroom at this
time.

 

 UNIDENTIFIED ATTORNEY: Your Honor, may I intervene?

 

 THE COURT: I'm going to let this witness step down at this
particular point in time.

 

 [THE STATE]: I need to recess for a minute, Judge. If we do that,
we can do that, but I've got to have a minute to get other witnesses lined up.

 

 THE COURT: Okay then. Mr. James, you can step down, and I will
get an attorney to come talk to you. As a matter of fact, while we're on recess, I'll
see whether or not my office can get in contact with someone to come discuss with
you your Fifth Amendment right, all right?

 

 [JAMES]: Thank you, sir. 


 Outside the jury's presence, Scott Rectenwald, the court-appointed attorney for James,
counseled James on his constitutional rights, and the State proffered the facts it sought to have James
testify to:

1. that James purchased a cell phone from the murder victim;


2. that the police contacted James because of his possession of the cell phone;


3. that on the day of his death, the murder victim, in the company of Smith, had purchased
$50.00 worth of drugs from James at about 3:00 p.m., and another $100.00 worth of drugs
at about 5:00 p.m., both quantities of drugs being delivered in clear sandwich bags;


4. that the murder victim squeezed the bag of drugs with his hand to break up the drugs inside;
and


5. that when Smith saw the drugs in the baggie, he seemed angry.


 Again outside the jury's presence, James informed the court that he refused to testify, the trial
court held him in contempt, and James gave voir dire testimony that he told the State "a week or so"
before the trial that he "didn't want to testify and that [he was] going to exercise [his] Fifth
Amendment." In a subsequent hearing held in the judge's chambers (also outside the presence of
the jury), the district attorney and assistant district attorney both testified that about a week before
trial, they spoke with James for about fifteen minutes and while he did not want to "get on the stand
and testify because of all those people in the courtroom," he said he would tell the truth if called as
a witness. Both testified that James never indicated that he would assert his Fifth Amendment rights
or otherwise refuse to testify.  

 After the testimony and argument, Smith moved for a mistrial arguing that the State called
James to testify despite knowing James would refuse to testify and that James' invocation of his
Fifth Amendment rights, in the presence of the jury, prejudiced Smith. The trial court denied the
motion and held that the State neither knew, nor should it have known that James would invoke the
Fifth Amendment.  

II. Standard of Review

 We review a trial court's denial of a mistrial under an abuse of discretion standard. Trevino
v. State, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999). We must uphold the trial court's ruling if
that ruling was within the zone of reasonable disagreement. Montgomery v. State, 810 S.W.2d 372,
391 (Tex. Crim. App. 1990) (op. on reh'g). 

 Mistrial is an extreme, but appropriate, remedy when the objectionable events are so
emotionally inflammatory that curative instructions are not likely to prevent the jury from being
unfairly prejudiced against the defendant. Young v. State, 137 S.W.3d 65, 71 (Tex. Crim. App.
2004). Conversely, a mistrial is not required where prejudice is curable by an instruction to the jury
to disregard. Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). (2)

III. James' Invocation of His Fifth Amendment Rights Did Not Prejudice Smith

 Smith's sole argument on appeal is that the trial court erred by not granting his motion for
mistrial. Smith argues that James' invocation of his Fifth Amendment privilege in the presence of
the jury irreversibly prejudiced him. In support of his argument, Smith cites Vargas v. State, 442
S.W.2d 686 (Tex. Crim. App. 1969), and Washburn v. State, 164 Tex. Crim. 448, 299 S.W.2d 706
(1956). 

 In Vargas, the court held it was prejudicial error to call a co-indictee to the stand knowing
he would invoke his Fifth Amendment privilege against self-incrimination. See Vargas, 442 S.W.2d
at 687. The co-indictee claimed the privilege against self-incrimination throughout examination by
the prosecutor. See id. After the witness' first refusal to answer, the prosecutor said, "This man has
no right to refuse to testify on the grounds of incrimination. He's already been convicted of the
offense for which he is to be questioned." See id. The court found error in the State calling the
co-indictee as a State witness. See id. (citing Washburn, 299 S.W.2d 706 (to place witness on stand
and wring from him refusal to testify, affording to jury opportunity to consider refusal as
circumstance of guilt, has been said to be "certainly prejudicial")). The Vargas court did not address
the fact that the co-indictee had no valid Fifth Amendment privilege to invoke. See Coffey v. State,
796 S.W.2d 175, 177 n.4 (Tex. Crim. App. 1990) (it could have been error had State asked witness
series of damaging questions in such a way as to invite jury to assume answers to each question
would have been in affirmative). 

 In Washburn, the court found prejudicial error when the State was permitted to call a
co-defendant to testify and, by fact-laden questions, "the state was permitted to plant in the jury's
mind full details as to how they claimed this crime was committed, and yet the only substantive
evidence which they were producing was the answer of the witness that he refused to answer on the
ground that his answers might tend to incriminate him . . . ." Id. at 706. The Texas Court of
Criminal Appeals determined that under those circumstances, calling such a witness with the
knowledge that he would invoke the Fifth Amendment and refuse to testify, "[s]uch refusal to testify
was prejudicial because it could be used as an incriminating fact against the appellant." Id. at 708.

 When compared to the present case, Washburn and Vargas are distinguishable. In both
cases, the witness was a co-indictee or co-defendant, and the State knew the witness would invoke
the Fifth Amendment privilege. In Washburn, the State asked fact-laden questions to suggest how
the crime was committed. In Vargas, although the court did not set out the State's line of
questioning, it relied on Washburn, concluding the proceeding was prejudicial. This suggests that
it was not the calling of the witness who claimed his Fifth Amendment privilege, but the questioning
that influenced the courts' conclusions. 

 In this case, James was not a co-defendant or co-indictee and was not charged with any crime
in connection with the murder Smith was accused of committing. After a factual hearing, the trial
court held that the State neither knew, nor should it have known that James would refuse to testify. 
Here, the State did not ask James fact-laden questions or otherwise present its theory of the case
while James was on the stand. The only comment the State made was that James was not being
accused of a crime. There is no other evidence in the record to indicate Smith was prejudiced by
James' refusal to testify. Based on the foregoing, we hold that the trial court did not abuse its
discretion and we overrule Smith's point of error. 

 We affirm the judgment of the trial court. 



 Jack Carter

 Justice


Date Submitted: December 28, 2009

Date Decided: January 11, 2010


Do Not Publish

1. U.S. Const. amend. V.
2. Smith moved for a mistrial only and did not request the trial court to instruct the jury to
disregard James' alleged inadmissible evidence. When a party's first action is to move for a mistrial,
the scope of appellate review is limited to the question of whether the trial court erred in not taking
the most serious action of ending the trial; in other words, an event that could have been prevented
by timely objection or cured by instruction to the jury will not lead an appellate court to reverse a
judgment on an appeal by the party who did not request these lesser remedies in the trial court. 
Young v. State, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004).