**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00128-CR**
_____

**JACKIE LYNN LONG, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the County Court**
**Jasper County, Texas**
**Trial Cause No. JC34639**

_____

**MEMORANDUM OPINION**

After pleading not guilty, Jackie Lynn Long was convicted by a jury of the offense of burglary of a vehicle. The jury assessed punishment at one year in county jail, assessed a $2000 fine, and assessed restitution to the victim in the amount of $850. Long appealed. In two appellate issues, Long argues the trial court erred in allowing an unqualified attorney to act as an assistant prosecuting attorney and the trial court abused its discretion in admitting certain evidence.

1

Evidence at Trial

Brandon Midkiff testified that on April 14, 2017, he went fishing with his father in Jasper County. According to Brandon, he rode separately from his father to the boat ramp and met him there. Brandon testified that when they returned to the boat ramp after fishing, his father discovered items missing from inside his father's toolbox in his father's truck bed. They notified the Jasper County Sheriff's Office, and while waiting for law enforcement to arrive, Brandon remembered that he had a dash camera recently installed on his own truck that recorded on motion or impact when parked and that the dash camera might have captured footage of the theft. According to Brandon, as a business owner, he always traveled with a laptop, and he retrieved his laptop from his truck. He testified he downloaded the multiple images from the dash camera to his laptop, showed the images to his father, "narrowed down" the videos that pertained to his father's truck from all the videos picking up any motion, and provided to Deputy Cal Morgan a thumb drive of about a minute and thirty-nine seconds of the "narrowed down" videos depicting a man in between Brandon's and his father's trucks. According to Brandon, no one else "even remotely walked near our vehicles[]" and the man in the video was in a truck with no boat, was driving by multiple times and "looking and reversing" and the vehicle looked suspicious going against the flow of traffic for the boat ramp. The thumb drive was admitted into evidence as Exhibit No. 1, and footage from the thumb drive

was played for the jury. A still image of a man from the video played for the jury was admitted as Exhibit No. 3.

Rodney Midkiff testified that he went fishing with his son Brandon, and that when they returned to the boat ramp, Rodney discovered items from his truck toolbox scattered in the bed of his truck and other items from the toolbox missing. According to Rodney, he worked in the air-conditioning business and the items missing included a significant number of tools, air-conditioning gauges, and copper fittings, and an inventory sheet listing of the stolen items was admitted into evidence. He testified that Brandon pulled a card out of his dash camera and put it on his computer at the scene and they watched the footage, and at trial Rodney identified his truck in the footage played for the jury.

Amy Midkiff, Rodney's daughter and Brandon's sister, testified that her brother showed her the footage from that day of the man that committed the theft and the suspect's truck, and that she "had a screen shot in [her] phone from the video[]" of the truck. Amy testified that on May 25, 2017, while driving from Kirbyville to Silsbee, she observed a truck pull out in front of her and she "recognized the truck immediately[]" as the man's truck in the footage of the theft and that when she passed the truck, she recognized the man in the truck as the man in the video that stole her father's belongings. Amy testified that she identified the truck because it had the same distinctive stickers in the same location, the back

3

window busted out, and it was the same make and model as the truck in the video footage. According to Amy, she called the Jasper County Sheriff's Office to notify them that she located the truck and reported the license plate.

Deputy Cal Morgan with the Jasper County Sheriff's Department testified that he met with Brandon and Rodney at the boat ramp and then later retrieved the jump drive of Brandon's truck dash camera footage. According to Deputy Morgan, he could see the build of the person in the video and the truck with stickers on the windows, and the license plate numbers provided by a female that identified the truck on the highway helped him identify Long as the perpetrator. Long failed to show up to meet Deputy Morgan to review the video footage together as scheduled, and Deputy Morgan obtained a warrant.

Deputy Kevin Holloway with the Jasper County Sheriff's Office testified that he had been on the "look-out for the truck[]" and observed a truck that matched the "very distinctive[]" description based on the year, make and model, the stickers on the back, and the back driver's side window busted out. According to Deputy Holloway, he initiated contact with the driver, identified Long as the driver by his driver's license and as the subject of the warrant, placed Long in custody, and transported Long to the jail.

4

The Assistant Prosecuting Attorney's Participation in the Trial

In his first issue, Long argues the trial court erred in allowing an unqualified attorney to act as an assistant prosecuting attorney ("APA"). Section 41.103(a) of the Texas Government Code provides that "[a]n assistant prosecuting attorney must be licensed to practice law in this state and shall take the constitutional oath of office." Tex. Gov't Code Ann. § 41.103(a). Section 81.102 of the Texas Government Code provides, in pertinent part:

> (a) Except as provided by Subsection (b), a person may not practice law in this state unless the person is a member of the state bar.
> (b) The supreme court may promulgate rules prescribing the procedure for limited practice of law by . . . unlicensed graduate students who are attending or have attended a law school approved by the supreme court.

*See id.* § 81.102. The *Rules Governing the Supervised Practice of Law by Qualified Law Students and Qualified Unlicensed Law School Graduates in Texas* (hereinafter "the Rules") provide as follows, in relevant part:

**Rule I. Purpose**

> These rules are promulgated pursuant to Section 81.102(b) of the Texas Government Code for the purpose of governing the participation of qualified law students and qualified unlicensed law school graduates in the limited practice of law in Texas. These rules are promulgated to provide competent legal services for all persons and to furnish practical training to qualified law students and to qualified unlicensed law school graduates.

## Rule II. Eligibility; Qualified Law Student and Qualified Unlicensed Law School Graduate Defined

A. To be eligible to obtain a supervised practice card and perform the activities in Rule VI, a person must be:
   (1) a qualified law student; or
   (2) a qualified unlicensed law school graduate.
. . . .
C. A qualified unlicensed law school graduate is a graduate:
   (1) of one of the following programs at a law school or provisionally accredited by the American Bar Association:
      (a) a juris doctorate program; or
      (b) an LL.M. program that satisfies the requirements of Rule 13 of the *Rules Governing Admission to the Bar of Texas*; and
   (2) who has:
      (a) not yet taken a bar examination;
      (b) taken only one bar examination and is awaiting results of the examination; or
      (c) taken only one bar examination and not achieved a passing score;
   (3) who has applied for admission to the Texas Bar, whether based on a Texas Bar Examination score or a transferred Uniform Bar Examination score, and paid all relevant fees under the *Rules Governing Admission to the Bar of Texas*; and
   (4) who is certified by the dean of his or her law school or by the dean's designee to:
      (a) have met the graduation requirement in Rule II(C)(1); and
      (b) possess the present good moral character and fitness required to practice law.

## Rule III. Application; Issuance of Supervised Practice Card; Duty to Update Contact Information

A. A qualified law student or a qualified unlicensed law school graduate must submit to the State Bar of Texas an application for supervised practice on forms prescribed by the State Bar of Texas and a fee in an amount set by the State Bar of Texas. The application must include:
   (1) A certification in writing by the qualified law student or the qualified unlicensed law school graduate that he or she:

6

(a) has read and is familiar with these rules, the Texas Disciplinary Rules of Professional Conduct, the Texas Rules of Disciplinary Procedure, and the Texas Lawyer's Creed; and

(b) agrees to be subject to and abide by these rules, the Texas Disciplinary Rules of Professional Conduct, the Texas Rules of Disciplinary Procedure, and the Texas Lawyer's Creed;

(2) a certification by a dean of the applicant's law school attesting to the requirements in Rules II(B)(2) or II(C)(4); and

(3) a certification from the supervising attorney attesting that the supervising attorney meets all requirements in Rule VII and will directly supervise the applicant.

B. If the State Bar of Texas determines that a qualified law student or a qualified unlicensed law school graduate has satisfied the requirements of Rules II and III(a), the State Bar of Texas must issue a supervised practice card to the qualified law student or the qualified unlicensed law school graduate.

. . . .

## Rule VI. Permitted Activities

A. Subject to all applicable rules and statutes, . . . a qualified unlicensed law school graduate who has a currently effective supervised practice card may:

(1) subject to the approval of the presiding judge . . . appear in any trial . . . on behalf of a client provided that the . . . qualified unlicensed law school graduate:

(a) has obtained the client's consent;

(b) notifies or has previously notified the court . . . of the client's consent; and

(c) is accompanied, whether in person or by remote means, by the supervising attorney[.]

. . . .

## Rule VII. Supervising Attorney

A. Except as otherwise provided in Rule VII(B)[1], an attorney who is supervising a qualified law student or quailed unlicensed law school graduate must:

---

[1] Rule VII(B) is not pertinent to the case or our analysis.

7

(1) be an active member of the State Bar of Texas and in good standing who has practiced law in Texas for at least three years:

(2) assume professional responsibility for the direct supervision of and for any activity performed by the qualified law student or qualified unlicensed law school graduate under these rules;

(3) maintain professional malpractice and errors and omissions insurance covering the supervised qualified law student or qualified unlicensed law school graduate, unless the attorney is supervising the student or the graduate in the attorney's official capacity as a public prosecutor or assistant public prosecutor or is an attorney otherwise protected by governmental immunity;

(4) supervise not more than four qualified law students and qualified unlicensed law school graduates simultaneously; and

(5) immediately notify the State Bar of Texas Membership Department if the lawyer no long meets the requirement of these rules or if the lawyer's supervision is ending for any reason.

. . . .

*Rules Governing the Supervised Practice of Law by Qualified Law Students and Qualified Unlicensed Law School Graduates in Texas*, Rules I, II, III, VI, VII (including amendments received through Feb.1, 2022).

According to Long, the State allowed a law student who had taken the bar exam, but had not received the results or her law license, to prosecute Long's case in violation of section 41.103 of the Texas Government Code. Long argues that the use of the word "limited" before the word "practice" in section 81.102 of the Texas Government Code has meaning, but he does not offer any interpretation of the meaning.

The State argues that the *Rules Governing the Supervised Practice of Law by Qualified Law Students and Qualified Unlicensed Law School Graduates in Texas*

8

are intended to limit the practice of law by unlicensed law school graduates, but the rules allow a qualified unlicensed law school graduate properly supervised during the trial to practice under supervision, and the APA complied with those rules and had the ability to appear in the trial representing the State.

During trial on March 28, 2022, after the venire members were seated and before voir dire began, defense counsel raised a complaint and the parties had the following discussion with the trial court on the record:

> [Defense counsel]: Your Honor, may we approach? It's my understanding that 41.103 of the Government Code says the assistant prosecuting attorney must be licensed in the State of Texas. I checked the State Bar website this morning, and it does not show that [the APA] is a licensed attorney in the State of Texas.
>
> [APA]: I have supplied my license, my State Bar [of] Texas license to the judge's office this morning; and I also have a copy of it, if you would like to see it?
>
> [Defense counsel]: We do. You've already been licensed?
>
> [District Attorney]: She has a license to work under my license, and she's allowed to participate in trials and do anything a lawyer can do under my supervision.
>
> [Defense counsel]: It's my understanding once you take the bar exam, a student bar card is no longer valid and you must have something from the state showing authority to practice.
>
> [APA]: Okay, Your Honor, if you would allow me to go get my license and it will clarify the dates. I'll be right back.
>
> (Brief recess)
> [APA]: Just so I can clarify, briefly, this is my State of Texas license that was produced to me to practice January 14th, 2022, valid through

2/28/23. I did sit for the Texas Bar on February 22nd and 23rd, which has already been approved for my character and fitness as being able to practice today.

[Defense counsel]: But she does not have her bar results, Your Honor, and she's not a licensed attorney in the State of Texas; and to be a prosecuting attorney, you must be licensed.

[APA]: While [defense counsel] does have an on view [sic] that I have not passed the State Bar of Texas and I have sat for it, I'm not here today trying to practice as - -  on my own. I'm here today trying to practice under supervised practice with my supervisor here with me today.

[Defense counsel]: But the Code - -

[District Attorney]: She's clearly entitled to.

[Defense counsel]: But the Code is clear, too, and it says she's got to be a license [sic] attorney.

[APA]: Which I am a licensed attorney under the State Bar of Texas. My license number is right there the 24127546.

[Defense counsel]: I ran it this morning and I ran it last night. When you punch in that bar card, it pulls up nothing. It does not show that she's licensed in the State of Texas to practice.

[APA]: So, did I fabricate this material?

[Defense counsel]: I'm just saying what pulled up.

THE COURT: Do you have any problem with the - -

[District Attorney]: I plan to be here the whole time - -

THE COURT: Do you have any objection?

[Defense counsel]: Yes, Your Honor, I do.

10

THE COURT: Prosecuting the case with her assistance - -

[Defense counsel]: The prosecuting, it's no problem; but her doing voir dire, we object, or any part of this trial.

[APA]: Based on the fact that I'm not licensed although I have a license number?

[Defense counsel]: She is not shown to be licensed to practice in the State of Texas.

[APA]: [Defense counsel], can I ask you a question? Do you believe that I fabricated this material and that I would jeopardize my law license?

[Defense counsel]: I'm not here to answer questions. I'm just here to say that you need a license - -

THE COURT: We'll answer this outside the presence of the jury. We're going to go ahead and recess the jury for another ten minutes while we work through a couple of administrative matters. . . .

(The venire panel exits the courtroom.)

[Defense counsel]: The statute's pretty clear. You've got to be licensed to practice; and as I've stated earlier, when I pulled her up on the website it does not show her as eligible to practice law in the State of Texas.

[APA]: However, I do have authorization here from the State of Texas showing I am licensed and who authorized me to practice law. I also have the congratulations letter right hear saying, "Your State Bar of Texas supervised practice card certification notice is attached. As a qualified law student or law school graduate, this card affords you the privileges provided in general discovery and supervised practice of law." I'm able to represent a client. I'm able to appear in any trial hearing, arbitration or other proceeding; negotiate and prepare [] legal instruments, such as contracts or wills; file papers on behalf of a client with the Court; provide legal services to a client. The only caveat is that . . . the attorney who supervises me must be present, which [the District

11

Attorney] is here. There - - I recognize [defense counsel]'s argument that I'm not listed on the State Bar of Texas as an attorney on my own. However, I'm not making that argument. The argument that I'm making today is that I am licensed to practice with my supervisor here which she is also here. I have a state bar - - state bar number. This has been supplied by the State Bar of Texas.

THE COURT: And you plan to be here the whole time - -

[District Attorney]: I plan to be here the whole time.

THE COURT: All right. As long as our district attorney - - as long as our district attorney's present in the courtroom I'll allow this to continue.

[Defense counsel[2]]: We still object, Your Honor.

THE COURT: Overruled.

[APA]: Your Honor, is there any way that we would be able to submit my State Bar of Texas license as an exhibit for the record if there's any instances or issues with this after trial?

THE COURT: Any objection?

[Defense counsel]: None except that's not a certified copy. We object to that.

THE COURT: All right. . . . I'll allow that to be entered. Can you get a certified copy of it?

[APA]: I can, yes, sir. Not today, but I can provide one at a later date - -

---

[2] The court reporter's transcript states the APA made this objection, but defense counsel argues on appeal that the defense attorney made the objection, and the trial court overruled the defense attorney's objection. The State does not contend otherwise, and when read in context it appears the court reporter mistakenly reflects it was the APA speaking.

12

THE COURT: I'll allow that one until you can get a certified copy for the court reporter.

A copy of a notice from the Membership Department of the State Bar of Texas was included as part of the exhibit volume of the reporter's record. The type-written notice on State Bar of Texas letterhead listed the name, bar number, and law school for the APA that participated in this case and stated that "[t]his notice is to certify" that the individual "is enrolled in the State Bar of Texas as an Associate Member Effective: 01/14/22 thru 02/28/23[,]" that "[a]n associate member may not practice law unless under the supervision of a licensed attorney[,]" and the name and bar number for the supervising attorney listed on the notice matched the supervising prosecuting attorney that supervised the APA during the trial. The notice also stated the following:

> Associate Members of the State Bar have complied with Tex. Gov't Code 81.102(b), (2) & (3), "Rules Governing the Supervised Practice of Law by Qualified Law Students and Qualified Unlicensed Law School Graduates in Texas" promulgated thereunder.

In the trial court and on appeal, Long argues that the Texas Supreme Court's authorization in section 81.102(b) of the Government Code for the limited practice of law by "unlicensed graduate students who are attending or have attended a law school approved by the supreme court[]" does not apply to assistant prosecuting attorney's because section 41.103(a) of the Government Code requires that "[a]n assistant prosecuting attorney must be licensed to practice law in this state and shall

13

take the constitutional oath of office." Long cites no authority, nor are we aware of any, that supports his argument. Rule VI(A)(1) of the Rules provides that qualified law students or qualified unlicensed law school graduates (as defined by the Rules) can, among other things, participate in trial if they have a currently effective supervised practice card; are accompanied by a supervising attorney; and have notified the court, obtained approval from the presiding judge, and obtained the client's consent, and there is no exception prohibiting those qualified law students or qualified unlicensed law school graduates from participating as assistant prosecuting attorneys. *See Rules Governing the Supervised Practice of Law by Qualified Law Students and Qualified Unlicensed Law School Graduates in Texas* Rule VI(A)(1).[3]

The supervising attorney listed for the APA stated to the court that she would be supervising the APA for the duration of the trial and nothing in the record shows otherwise. Furthermore, Long does not argue that the APA failed to meet the definition of a "qualified unlicensed law school graduate" under the Rules, or that the supervising attorney was not present, or that the APA's activities were outside

---

[3] Rule VII also provides that the supervising attorney does not have to maintain malpractice insurance covering the supervised qualified law student or qualified unlicensed law school graduate if the supervising attorney is supervising the student or graduate in the attorney's official capacity as a public prosecutor or assistant public prosecutor. *See Rules Governing the Supervised Practice of Law by Qualified Law Students and Qualified Unlicensed Law School Graduates in Texas* Rule VII(A)(3).

14

the scope of the permitted activities enumerated in the Rules, or that the APA did not give the required notice or obtain the necessary consent or approval to participate in the trial. On this record we cannot say the trial court erred in determining that the APA was a qualified unlicensed law school graduate under the Rules and she was allowed to participate in the trial while supervised by her supervising attorney. *See generally Applin v. State*, 705 S.W.2d 411, 412-13 (Tex. App.—Fort Worth 1986, no pet.) (under prior version of the Rules, an unlicensed law school graduate awaiting bar results acted within the scope of the Rules when, in a criminal case and while in the presence of his supervising attorney, he spoke to the appellant about the status of the case, assisted with trial preparation and strategy, and conducted the cross-examination of the State's two main witnesses). We overrule issue one.

Exhibit Nos. 1 and 3

In his second issue, Long argues the trial court erred in admitting Exhibit No. 3, which Long describes as "an enhanced photograph" into evidence which Long asserts was not provided to the defense prior to trial in violation of *Brady v. Maryland*, the Texas Michael Morton Act, and article 39.14 of the Texas Code of Criminal Procedure, and that the trial court erred in denying Long's motion for new trial on this same issue. While Long's stated issue only mentions Exhibit No. 3, his argument also alleges error in the admission of Exhibit No. 1.

15

We review a trial court's admission of evidence for abuse of discretion. *See Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.* We will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to the case. *See De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009). Where the alleged error is not constitutional, we will reverse the trial court's judgment only if the error affected the appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *See Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, the appellate court has fair assurance that the error did not influence the jury or had only a slight effect. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

As to Exhibit No. 1, Long argues that he objected to the video under Texas Rules of Evidence 1002 and 1003 and that "[t]he video offered by the State was not the original recording of the incident as the operator had selected certain short clips from the original video and made a new recording of these clips and redacted all other video." According to Long, the operator had edited the recording to select what

16

he wanted to introduce as evidence and denied Long access to the rest of the material on the video.

Rule 1002 of the Texas Rules of Evidence provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or other law provides otherwise." Tex. R. Evid. 1002. Rule 1003 provides the following exception to this requirement: "A duplicate is admissible to the same extent as an original unless a question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Tex. R. Evid. 1003 ("Admissibility of Duplicates"). The authentication requirement for admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Tex. R. Evid. 901(a).

At trial, Brandon testified that he recognized Exhibit No. 1 as the thumb drive that he made within a couple of days of the incident and provided to Deputy Cal Morgan. According to Brandon, the recording was prepared on a device capable of making an accurate recording of visual and audio information and he, as the operator, was competent to operate the device. Brandon testified that the recorded clips on the video had not been altered but simply moved to the thumb drive. Long objected to the admission of Exhibit No. 1 because "[t]he thumb drive does not comport [with] rules of evidence 1002 or 1003 of the Texas Rules of Evidence[]" and challenged the reliability of the evidence because it was not an original recording. Long argued

17

that the video had been altered because "[t]here's no way they can say that this thing has not been altered when we've got a five-hour time period and we're only looking at a minute and 39 seconds of video from that period." The trial court allowed Long to voir dire Brandon outside the jury's presence regarding the exhibit, and Brandon testified that the dash camera operated similarly to a game camera and works off motion, that the device records in incremental sections as separate files, he did not edit any individual recordings, he moved the relevant files to the thumb drive and labeled the file name to a description of the video clip, but the video files were not altered in any way, and the video clips on the thumb drive were the original video from that day and "complete and whole." The trial court made the following ruling outside the jury's presence:

> As the Court understands, that file is a single unaltered file. The Court does take notice that the name was changed to designate it for that alleged episode. I'm going to allow it as evidence and all this can be handle[d] in cross and go ahead and proceed.

Brandon testified that he did not alter any of the actual video clips and that the thumb drive included only videos relevant to the case. On this record, we cannot say the trial court abused its discretion in concluding that Brandon's testimony was sufficient to meet the requirement that the evidence be authenticated. *See* Tex. R. Evid. 901. Also, Long's challenge that the thumb drive is not a complete recording of what was recorded that day goes to the weight of the evidence and not its admissibility. *See Robinson v. State*, 739 S.W.2d 795, 802 (Tex. Crim. App. 1987)

18

(complaint that evidence not "accurate" goes to weight not admissibility). We conclude the trial court did not abuse its discretion in overruling Long's objection as to Exhibit No. 1.

As to Exhibit No. 3, Long argues that the State offered the exhibit as a still photograph allegedly of Long from the video that the State asserted Long had access to because it was from the video that was given to Long and published to the jury as Exhibit No. 1. According to Long, the State maintained that it provided a black and white copy of the still photograph to Long and kept a color copy for the State's file. Long argues on appeal that the color copy admitted as Exhibit No. 3 had been enhanced and, had he had access to that color copy, it would have affected his preparation and strategy for trial and would have influenced his decision whether to accept a plea and not proceed to trial.

At trial, when the State offered Exhibit No. 3 into evidence as "a still shot from the video the jury watched[,]" Long lodged the following objection:

> [Defense counsel]: Your, Honor, I feel like this photo's been doctored because it surely - - may we approach?
>
> THE COURT: Yes, sir.
>
> [Defense counsel]: This is what they're tendering. That's what they gave me. Somebody has worked on that, there's been a lot of clarity.
>
> THE COURT: They gave you a black and white copy?

19

[Defense counsel]: Yes, sir. That's what I got, but I mean, you can tell there is - - this is real fuzzy and grainy and this one's been cleaned up a lot. Somebody's been messing with that photo.

[APA]: Your Honor, I would tender that the difference is the fact this is a black and white photo and this is a color photo and his face is reflecting the shadow of a black and white photo and this is reflecting his real-life color.

[Defense counsel]: Black and white is always a sharper image color any day.

[APA]: That's also an opinion.

[Defense counsel]: Well, so is yours on that.

THE COURT: Okay. You didn't receive a color photo - -

[Defense counsel]: No, sir. I got the video, but I'm having - - that photo they're trying to introduce has been doctored.

[APA]: This photo is a still shot from the video that the jury just watched and has not been altered in any way, and you were provided this when you were provided the video that was published to the jury. The only difference is that I still-framed on it and then you were provided the black and white copy and my office maintained the color copy.

THE COURT: All right. I'll allow it.

[APA]: So, State's Exhibit No. 3 will be admitted?

THE COURT: Yes.

On appeal, Long argues that Exhibit No. 3 had not been provided to the defense prior to trial in violation of *Brady v. Maryland*, the Texas Michael Morton Act, and article 39.14 of the Texas Code of Criminal Procedure. To preserve an issue

20

for appellate review, the defendant must make a timely request, objection, or motion stating specific grounds for the ruling he desires the trial judge to make and obtain a ruling on the objection. Tex. R. App. P. 33.1(a)(1); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (citing *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995)). Even assuming without deciding that Long's comments at trial regarding Exhibit No. 3 amounted to an objection, his "objection" at trial varies substantially from his argument on appeal, he simply did not make a *Brady* violation challenge at trial, and this complaint was not preserved. *See Borne v. State*, 593 S.W.3d 404, 412 (Tex. App.—Beaumont 2020, no pet.) (citing *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986); *Coffey v. State*, 796 S.W.2d 175, 179 (Tex. Crim. App. 1990); *Ford v. State*, 488 S.W.3d 350, 351 (Tex. App.—Beaumont 2016, no pet.); *Shelling v. State*, 52 S.W.3d 213, 218 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd)). We overrule issue two.

We note that the section of the judgment entitled "Plea to the Offense" states "GUILTY[,]" but the reporter's record reflects that Long pleaded "not guilty." This Court has the authority to reform the trial court's judgment to correct clerical errors. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). We therefore reform the trial court's judgment to delete the plea of "GUILTY" and to substitute "NOT GUILTY."

Having overruled Appellant's issues, we affirm the trial court's judgment as reformed.

AFFIRMED AS REFORMED.

_____
LEANNE JOHNSON
Justice

Submitted on May 17, 2023
Opinion Delivered July 26, 2023
Do Not Publish

Before Horton, Johnson and Wright, JJ.